Argued November 27, re-submitted on record and briefs in banc
December 13, 1972, affirmed January 5, petition for
rehearing denied January 31, petition for review
allowed March 30, 1973
See later issue of Oregon Reports

## STATE OF OREGON, *Respondent, v.* STEVE McMANUS (No. 1009), *Appellant.*

504 P2d 1046

*Keith Burns,* Portland, argued the cause for appellant. With him on the brief was Jane Edwards, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY, FOLEY, FORT and THORNTON, Judges.

THORNTON, J.

Defendant was found guilty after a bench trial of the crime of criminal activity in drugs (ORS 167.207), namely, possession of seven marihuana seeds. The seeds were found in defendant's automobile as a result of a search pursuant to a warrant.

On appeal defendant contends that the trial judge erred in the following particulars:

(1) In denying defendant's motion to suppress the evidence seized under the search warrant;

(2) Because "* * * [t]he court had no jurisdiction to convict defendant of any crime because in order to be guilty of violating ORS 167.207, one must possess a usable quantity of narcotics * * *";

(3) In considering at the sentencing hearing Officer Wilson's statements that defendant was a trafficker; and

(4) Because defendant's sentence was so excessive as to constitute cruel and unusual punishment.

The search warrant was issued pursuant to an affidavit which read in pertinent part:

"I, Lucien B. Wilson, being first duly sworn, depose and say as follows:

"I am an Oregon State Police officer; that Steve McManus is known to me as a trafficker in narcotics and dangerous drugs; that I have this date, April 3, 1972 observed Steve McManus to hand to Randall Mark Graven what appeared to be a baggie of marijuana and receive money in return; I have

made approximately 40 arrests for narcotics violations and the object which McManus passed to Graven was the kind ordinarily used to contain marijuana; that at that time, Steve McManus was operating a 1972 White and orange Ford Ranchero bearing Oregon license AEH 679; that I have reasonable grounds to believe that narcotics and dangerous drugs are located in the above-described vehicle and on the person of the said Steve McManus and also are located in his residence at 974 E. Adams St. Burns, Oregon * * *."

Defendant contends here as below that the affidavit was insufficient, and that his federal and state constitutional rights were violated, in that (1) the things to be seized were not described with particularity; (2) the affidavit failed to show criminal activity present; and (3) the affidavit was based not on probable cause but on suspicion.

The essential facts are as follows: Officer Wilson was in the office of the District Attorney of Harney County, located in the county courthouse, in midafternoon on April 3, 1972. While standing by the window and looking out, he observed two automobiles pull up on the street outside, one operated by defendant, and the other by co-defendant Randall Graven. Officer Wilson saw defendant hand Graven "something plastic like a plastic baggie, or something," and then Graven gave defendant "something that was green" resembling money. The officer had previous information that defendant used and sold "marijuana and other items."

Based on what he had just seen, Officer Wilson applied for and obtained two search warrants, for a search of the person, automobile and residence of each suspect. Wilson, in the company of two other

officers, then went in search of defendant, stopped his automobile on the highway and searched it. In the course of the search the seven marihuana seeds were found. Defendant was arrested and transported to the Harney County Jail.

Defendant and Graven were tried jointly. Both motions to quash and to suppress the evidence seized were consolidated with the trial. Defendant did not testify or present any evidence either on trial or on his motion to suppress. The trial judge overruled defendant's motion, and after trial to the court found defendant guilty as charged.

■ We hold that the trial judge did not err in denying defendant's motion to suppress the marihuana seeds seized under the warrant. The challenged affidavit sets forth probable cause to authorize issuance of a warrant permitting the police to search defendant's automobile. We believe that when the drivers of two automobiles are observed pulling up abreast of each other, and one driver is seen passing a plastic baggie to the other driver in exchange for what reasonably appears to be money, we have a highly suspicious transaction. In addition to detailing the "baggie" transaction, the affidavit recited the following significant additional facts: (1) that the affiant had extensive prior experience in dealing with narcotics and dangerous drug violations; and (2) that affiant knew that McManus was "a trafficker in narcotics and dangerous drugs." This was reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a drug offense had been committed and that defendant might well be in possession of additional con-

traband. *State v. Keith,* 2 Or App 133, 142, 465 P2d 724, Sup Ct *review denied* (1970).

Legal principles expounded in cases cited by defendant such as *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), *Nathanson v. United States,* 290 US 41, 54 S Ct 11, 78 L Ed 159 (1933), and *State v. Ingram,* 251 Or 324, 445 P2d 503 (1968), while undoubtedly valid as abstract propositions of law governing searches and seizures, do not support a contrary holding as to the affidavit and search involved in the case at bar.

■ As we pointed out in *State v. Miller,* 2 Or App 87, 465 P2d 894, Sup Ct *review denied* (1970), *cert denied* 406 US 974 (1972), when information is acquired through personal observation of the affiant, the rule that the magistrate must be informed of some underlying circumstances on which informant based his conclusions and circumstances from which the officer concluded that the information was credible (as required by *Aguilar*) is not applicable.

As to *Spinelli v. United States,* supra, the principal authority relied upon in the dissenting opinion, we conclude that *Spinelli* is distinguishable from the case at bar in the following particulars, for example:

(1) In *Spinelli,* the suspect's frequent travels between East St. Louis, Illinois, and St. Louis, Missouri, and his use in St. Louis of an apartment equipped with two telephones did, as Justice Harlan pointed out, "reflect only innocent-seeming activity and data." We agree. But in the case at bar the officer actually saw what reasonably appeared to be an illicit transaction.

(2) In *Spinelli* the police were acting on a tip from an anonymous informant as to Spinelli's actual

gambling activities. In the instant case Officer Wilson saw the transaction personally.

Lastly, in *Spinelli,* at 417, we consider it significant that Justice Harlan distinguished *Draper v. United States,* 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959)—the Denver railroad station heroin case—by the fact that in *Draper* "* * * [i]ndependent police work in that case corroborated much more than one small detail that had been provided by the informant * * *." Similarly in the case at bar what Officer Wilson observed tended to corroborate his prior information that McManus "uses and sells * * * marijuana and other items."

■ As to defendant's second assignment of error, no error is presented for review because defendant took no exception in the trial court to the matter now complained of on appeal. *State v. Harville,* 11 Or App 625, 504 P2d 765 (1972); *State v. Burgess,* 5 Or App 164, 165, 166, 483 P2d 101 (1971).

■ ■ Nor do we think that the trial judge erred in receiving and presumably considering reports of defendant's criminal activity in drugs when he imposed sentence. A presentence report may contain hearsay information, and a trial court is presumed to be capable of giving appropriate weight to unconfirmed matter contained in such reports. Moreover, there was some evidence from which the court could well have found the allegations of the presentence report as to trafficking were corroborated. It was, after all, what reasonably appeared to be a sale of drugs by defendant to Graven which led to the arrest of both. The trial judge was entitled to discount defendant's denials of trafficking in illegal drugs in view of Officer Wilson's testimony of having observed the transaction between

defendant and Graven while looking out the window from the district attorney's office, and in view of Graven's admission to Wilson (although later repudiated by Graven) that he purchased from defendant the amphetamines found at Graven's home.

■ Finally, we do not believe that the trial judge erred in imposing the sentence complained of because the sentence was authorized by statute and does not constitute cruel and unusual punishment. *State v. Chilton,* 1 Or App 593, 465 P2d 495 (1970). While it is true that defendant received a more severe sentence than his co-defendant, this does not in itself make the sentence imposed on defendant cruel and unusual punishment. The trial court was entitled to impose a more severe sentence on defendant since there was evidence from which the court could have and did conclude that defendant sold Graven the amphetamines which the latter was convicted of possessing.

Affirmed.

SCHWAB, C. J., dissenting.

For convenience I restate the pertinent portions of the affidavit:

"* * * that Steve McManus is known to me as a trafficker in narcotics and dangerous drugs; that I have this date, April 3, 1972 observed Steve McManus to hand to Randall Mark Graven what appeared to be a baggie of marijuana and receive money in return; I have made approximately 40 arrests for narcotics violations and the object which McManus passed to Graven was the kind ordinarily used to contain marijuana; that at that time, Steve McManus was operating a 1972 white and orange Ford Ranchero bearing Oregon license AEH 679; that I have reasonable grounds to believe that narcotics and dangerous drugs are located in the above-described vehicle and on the person of the said

Steve McManus and also are located in his residence at 974 E. Adams St. Burns, Oregon. I make this affidavit in request of a Search Warrant to search the above person and places for narcotics and dangerous drugs."

Essentially, the only averments in the affidavit that could possibly be interpreted as giving rise to probable cause to suspect that the defendant had committed a crime were: (1) that the police officer saw the defendant hand to Graven what appeared to be a baggie of marihuana in exchange for money; and (2) that the defendant was known to the police officer as a trafficker in narcotics and dangerous drugs.

At the suppression hearing, the sole testimony of the police officer, on direct examination, as to the first averment dealt with what he saw while he was looking out the window of the district attorney's office in Harney County:

"A.  At that time, I observed two vehicles pull up—one belonging to Mr. McManus and the other belonging to Mr. Graven—on the street out there, pull up side by side and observed Mr. McManus hand something plastic like a plastic baggie, or something, over to Mr. Graven. And then I saw him return something that was green, it looked to me like money."

On cross-examination, he testified as follows:

"Q.  Now, Officer Wilson, you stated that you were in the District Attorney's office at the time you observed Mr. McManus and Mr. Graven?
"A.  Yes, sir.

"Q.  And you saw something passed, uh, between them?
"A.  Yes, sir.

"Q.  And it appeared to be a baggie.
"A.  Yes, sir.

"Q. Could it have been, uh, uh, any—an ordinary plastic container?

"A. Yes, sir.

"Q. And you couldn't see the contents of this I take it.

"A. No, sir.

"Q. And, uh, could you be certain that what you saw come back from Mr. Graven was money?

"A. No, sir, I could not.

"Q. (Pause) So then, you're not certain what was passed.

"A. No, sir."

The only testimony relating to the second averment was:

"Q. Prior to that particular date, had you known Mr. McManus?

"A. Yes, sir.

"Q. What, if anything, did you know about him?

"* * * * *

"A. Well, we have had information and stuff that he uses and sells, uh, marijuana and other items.

"Q. Did you have this knowledge at the time you were looking out this window?

"A. Yes, sir."

*Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), should be dispositive of this matter. In *Spinelli* the defendant was charged in the federal court with conducting unlawful gambling activities based on evidence seized as the result of a search pursuant to warrant. The affidavit upon which the warrant was issued was made by an agent of the Federal Bureau of Investigation. In essence, it alleged:

(1) "* * * 'William Spinelli is known to this

affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.' ";

(2) "* * * the FBI 'has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4-0029 and WYdown 4-0136.' " (393 US at 414) and

(3) "* * * Spinelli was * * * seen parking his car in a lot used by residents of an apartment house at 1108 Indian Circle Drive in St. Louis, between 3:30 p.m. and 4:45 p.m. On one day, Spinelli was followed further and seen to enter a particular apartment in the building.

"An FBI check with the telephone company revealed that this apartment contained two telephones listed under the name of Grace P. Hagen, and carrying the numbers WYdown 4-0029 and WYdown 4-0136." 393 US at 413-14.

The Supreme Court, speaking through Mr. Justice Harlan, held that the affidavit was insufficient, stating:

"We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed. As we have already seen, the allegations detailing the FBI's

surveillance of Spinelli and its investigation of the telephone company records contain no suggestion of criminal conduct when taken by themselves—and they are not endowed with an aura of suspicion by virtue of the informer's tip. Nor do we find that the FBI's reports take on a sinister color when read in light of common knowledge that bookmaking is often carried on over the telephone and from premises ostensibly used by others for perfectly normal purposes. * * * All that remains to be considered is the flat statement that Spinelli was 'known' to the FBI and others as a gambler. But just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient." 393 US at 418-19.

In the case at bar it is clear from the affidavit, as amplified by testimony at the suppression hearing, that all he saw was a small plastic package of a type in everyday use (contents unknown) being exchanged for something which might have been money. There is no doubt in my mind that if the two participants in this transaction had been wholly unknown to the officer the transaction would have appeared to him to be innocent or at the most one creating a vague suspicion—certainly not probable cause to believe that a crime was being committed. It seems reasonable to assume that only the police officer's knowledge that one of the participants was a trafficker in drugs led him to believe that he was seeing a crime being committed. The fact remains that neither in his affidavit nor his testimony did the officer ever state how the defendant McManus became known to him as a trafficker in drugs. A restatement of the last sentence in the above quote from *Spinelli* is sufficient:

"* * * All that remains to be considered is the

flat statement that Spinelli [McManus] was 'known' to the FBI [officer making the affidavit] and others as a gambler [drug trafficker]. But just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient [an exchange in broad daylight on the street in front of the courthouse of a small package, contents unknown, for something which might have been money]." 393 US at 418-19.

For the foregoing reasons I would reverse.

LANGTRY, J., joins in this dissent.