Argued June 1, reversed and remanded December 13, 1973

STATE OF OREGON, *Respondent, v.*
STEVE McMANUS, *Petitioner*
517 P2d 250

*Keith Burns*, Portland, argued the cause for petitioner. With him on the briefs was Jane Edwards, Portland.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

BRYSON, J.

The defendant was indicted for Criminal Activity in Drugs (ORS 167.207). The defendant filed a motion to quash the search warrant and to suppress the evidence (marijuana) seized. It was stipulated that the

court would hear the case without a jury and try "the issues in the indictment and the issues raised by the motion to quash and suppress at the same time."

The trial court denied defendant's "Motion to Quash and to Suppress Evidence" and found the defendant guilty as charged in the indictment.

Defendant appealed and the Court of Appeals affirmed by a divided court. *State v. McManus,* 12 Or App 84, 504 P2d 1046 (1973). We allowed the petition for review.

The defendant contends that the affidavit on which the warrant was issued was insufficient to show probable cause[1] and that the officer who executed the affidavit controverted the statements in the affidavit in his testimony on the motion to suppress.

Defendant's first assignment of error before the Court of Appeals was:

"The court erred in denying defendant's motion to suppress, which read as follows:

"Defendant * * * moves the Court for an Order

---

[1] ORS 141.010:

"A search warrant may be issued upon any of the following grounds:

"* * * * *.

"(2) When the property was used in the commission of, or which would constitute evidence of, the crime.

"* * * * *"

ORS 141.030:

"A search warrant cannot be issued but upon probable cause, shown by affidavit, naming or describing the person, and describing the property and the place to be searched."

Oregon Constitution, Art I, § 9; Fourth Amendment, U. S. Constitution.

ORS 141.060:

"If the magistrate is satisfied that there is probable cause to believe that the grounds of the application exist, he shall issue the search warrant."

quashing the affidavit for a search warrant of Lucia
B. Wilson, * * * a copy of which affidavit is at-
tached * * *; quashing the search warrant issued
by said Justice of the Peace * * * based on said
affidavit; and suppressing as evidence any items
seized * * *; and for an Order setting a time and
a place for a hearing on this Motion.

"Defendant's grounds for this Motion are that
his Federal and State constitutional right[s] to be
secure in his automobile against unreasonable search
and seizure have been violated, and the provisions
of ORS 141.030 have not been met, and the Affi-
davit is not sufficient in the following particulars,
to-wit:

"* * * * *

"2. The Affidavit does not show that any crim-
inal activity was present on either the defendant's
person, automobile or residence.
"3. Said Affidavit is not based on probable
cause but mere suspicion."

The defendant argued in the Court of Appeals and
before this court:

(1) "Defendant submits the officer in the in-
stant case did not have probable cause for a search;
the search was based on mere suspicion.

"In Officer Wilson's affidavit, he stated defend-
ant is 'known to me as a trafficker in narcotics and
dangerous drugs.' However, at trial, [and on the
motion] he indicated he did not know this of his
personal knowledge, but it was hearsay.

"* * * [T]here was nothing to show how the
person or persons who informed Officer Wilson
[that] defendant was a trafficker in dangerous
drugs reached their conclusions and there was no
evidence to show these persons were reliable or
truthful."

(2) "The only part of Officer Wilson's affidavit

that is relevant in determining whether there was probable cause for a search are his statements that he saw defendant hand Graven what appeared to be a baggie of marijuana and receive something that looked like money in return. However, he admitted on cross-examination the object he saw could have been an ordinary plastic container and he could not see what it contained, and he was not sure what defendant received from Graven.

"* * * It is unreasonable to assume that simply because two people are exchanging objects, these objects are contraband. * * * These circumstances are hardly suspicious, let alone sufficient to constitute [probable] cause for invading one's privacy."

■ The threshold question is whether the defendant can contest the accuracy of or the negligent mistakes in an affidavit in support of a search warrant by a motion to quash and suppress or does a motion to controvert, as provided in ORS 141.150 and 141.160, provide the exclusive procedure for doing so.

Certain facts from the record are necessary to explain the posture of the case. State Police Officer Wilson was standing in the Harney County Courthouse. He looked out the window and observed the incident involving defendant as described in his affidavit in support of the search warrant. Wilson's affidavit for the search warrant stated three basic facts: (1) "that Steve McManus is known to me as a trafficker in narcotics and dangerous drugs"; (2) "that I have this date * * * observed Steve McManus to hand to Randall Mark Graven what appeared to be a baggie of marijuana"; and (3) that the affiant observed defendant "receive money in return."

At the trial, which was stipulated to also be the

evidence on the motion to suppress, Officer Wilson testified:

"A.   At that time, I observed two vehicles pull up—one belonging to Mr. McManus and the other belonging to Mr. Graven—on the street out there, pull up side by side and observed Mr. McManus hand something plastic like a plastic baggie, or something, over to Mr. Graven. And then I saw him return something that was green, it looked to me like money.

"* * * * *.

"Q.   What, if anything, did you know about him [defendant]?

"* * * * *.

"THE COURT:   Yes, for the affidavit.

"* * * * *.

"A.   Well, we have had information and stuff that he uses and sells, uh, marijuana and other items.

"Q.   Did you have this knowledge at the time you were looking out this window?

"A.   Yes, sir."

On cross-examination he testified:

"Q.   Now, Officer Wilson, you stated that you were in the District Attorney's office at the time you observed Mr. McManus and Mr. Graven?

"A.   Yes, sir.

"Q.   And you saw something passed, uh, between them.

"A.   Yes, sir.

"Q.   And it appeared to be a baggie.

"A.   Yes, sir.

"Q.   Could it have been, uh, uh, any—an ordinary plastic container?

"A.   Yes, sir..   .

"Q. And you couldn't see the contents of this I take it.

"A. No, sir.

"Q. And, uh, could you be certain that what you saw come back from Mr. Graven was money?

"A. No, sir, I could not.

"Q. (Pause) So then, you're not certain what was passed.

"A. No, sir."

It should be noted that the above testimony was solely for the purpose of testing the accuracy of the affidavit. The court acknowledged this, and both parties acceded to this procedure. The search warrant had been issued, the marijuana seeds were seized from defendant's car, and the state introduced them in evidence. This evidence proved the state's case on the question of guilt. No objection was taken by the state as to this procedure for controverting Officer Wilson's affidavit.

In *People v. Butler*, 64 Cal 2d 842, 52 Cal Rptr 4, 415 P2d 819 (1966), the court was faced with the same problem when a motion to suppress was filed to test the accuracy of an affidavit on which a search warrant was issued rather than filing a motion to controvert. California Penal Code sections 1539-1540 were almost identical to ORS sections 141.150-141.160.[2] The court

---

[2] ORS 141.150:

"Hearing when grounds for issuance of search warrant are controverted. If the person from whose possession the property was taken controverts the grounds of issuing the warrant, the magistrate shall proceed to examine the matter by taking testimony in relation thereto."

ORS 141.160:

"Restoration of property to person from whom it was taken. If it appears that the property taken is not the same as that

concluded that a defendant may "attack the validity of a warrant at the preliminary hearing and at the trial whether or not he attacked it under sections 1539 and 1540."

> "* * * [T]he Legislature's purpose in enacting those sections [1539, 1540] was not to regulate the procedure for objecting to the introduction of evidence in criminal trials but to afford the person from whom property was wrongfully seized an expeditious remedy for its recovery. (See Aday v. Superior Court (1961) 55 Cal. 2d 789, 800, 13 Cal. Rptr. 415, 362 P2d 47.)" 415 P2d at 821.

The California court reasoned that the remedy provided by sections 1539 and 1540 "would serve the deterrent purpose of the exclusionary rule fitfully at best. It would not preclude an officer from testifying to what he saw in the course of a search under an invalid warrant or from using information obtained in such a search to secure other evidence. * * * It would afford no relief to a defendant from whom the property was not taken. * * * It would afford no relief when the property is contraband, which cannot be returned [as in the case at bar]. * * * Since the state must afford to 'every defendant a full and fair opportunity to secure an adjudication of all claimed deprivations of his constitutional rights in the securing of the evidence offered against him at the trial' (In re Sterling (1965) 63 Cal. 2d 486, 488, 47 Cal. Rptr. 205, 207, 407 P.2d 5, 7; see Townsend v. Sain, 372 U. S. 293, 312-318, 83 S. Ct. 745, 9 L. Ed. 2d 770), a requirement that he must exhaust the remedy under sections 1539-1540

---

described in the warrant or that there is no probable cause for believing that the grounds on which the warrant was issued exist, the magistrate shall cause the property to be restored to the person from whom it was taken."

would entail either a broadening of the remedy beyond the statutory terms or the adoption of exceptions when the statutory remedy was inadequate."

The procedure in *Butler* was affirmed in the recent case of *Theodor v. Superior Court,* 8 Cal 3d 77, 104 Cal Rptr 226, 501 P2d 234 (1972). In *Theodor* the defendant contended that he could, by a motion to suppress, attack the accuracy of the affidavit in an effort to prove there was no probable cause for the issuance of the warrant. The court stated:

"The standard of probable cause is most often relevant in the determination of whether the inferences drawn by a magistrate or officer from the facts presented (see Aguilar v. Texas, supra [378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964)]; Spinelli v. United States (1969) 393 U. S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637) are reasonable. (Dumbra v. United States, supra, 268 U. S. 435, 441, 45 S. Ct. 546, 69 L. Ed. 1032.) However, if a magistrate is presented with false or inaccurate information in an application for a warrant, the inferences he draws from such information are not based on reality but on the fantasies of the misinformed or misinforming affiant. Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal inference-drawing process of the magistrate. * * *" 501 P2d at 248.

"However, once the defendant has demonstrated to the court that the affidavit contains errors, the burden then shifts to the prosecution to establish that the inaccuracies were included as the result of reasonable misapprehensions. Since inaccurate statements in an affidavit frustrate the inference-drawing process, the magistrate's function is circumvented in much the same manner as when no warrant is obtained. * * *

"* * * [O]nce a defendant makes a prima facie showing of inaccuracy, the burden then shifts to the prosecution to negate that showing. * * *" 501 P2d at 251-52.

*See also, Commonwealth v. Hall,* 451 Pa 201, 302 A2d 342 (1973), to the same effect and citing *Theodor*; and *State v. Nanoff,* — Mont —, 502 P2d 1138 (1972).

The 1973 Criminal Code of Procedure, Chapter 836, Oregon Laws 1973, Sections 114 and 118® (effective January 1, 1974), provides much the same method. ORS 141.150 and 141.160, motion to controvert, have been amended accordingly. See also, Section 111 (grounds for motion for return or restoration of things seized).

---

®

"SECTION 114. (Motions to suppress evidence.) (1) Objections to use in evidence of things seized in violation of any of the provisions of sections 81 to 119 of this Act shall be made by a motion to suppress which shall be heard and determined by the court in advance of trial.

"(2) A motion to suppress which has been denied may be renewed, in the discretion of the court, on the ground of newly discovered evidence, or as the interests of justice require."

"SECTION 118. (Challenge to truth of the evidence.) (1) Subject to the provisions of subsection (2) of this section, in any proceeding on a motion to suppress evidence the moving party shall be entitled to contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure.

"(2) If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness.

"(3) In any proceeding under subsection (2) of this section, the moving party shall have the burden of proving by a preponderance of the evidence that the evidence presented before the issuing authority was not offered in good faith, was not accurate and was not truthful.

"* *.* * *."

We conclude that the defendant can contest the accuracy of or the negligent mistake in an affidavit by a motion to suppress before trial without first filing a motion to controvert as provided by statute.

Defendant contends the suppression hearing proved Officer Wilson's declaration in the affidavit, "[defendant] is known to me as a trafficker in narcotics and dangerous drugs," was hearsay and not of his personal knowledge; that no evidence was offered to show how he was so informed or how his informers reached the conclusions that defendant was a drug trafficker or if such informers were reliable or truthful.

In *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), the question before the court was the sufficiency of the affidavit:

> "The application stated that 'William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.' * * *" 393 US at 414.

> "We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. * * * All that remains to be considered is the flat statement that Spinelli was 'known' to the FBI and others as a gambler. But just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient." 393 US at 418-19.

In *United States v. Harris,* 403 US 573, 91 S Ct 2075, 29 L Ed 2d 723 (1971), Chief Justice Burger criti-

cized the above language in *Spinelli,* but a majority of the court refused to join in that portion of his opinion. Thus, *Spinelli,* in this respect, continues to state the law. On a Fourth Amendment constitutional standard enunciated by the United States Supreme Court, there is nothing to prevent this court from adopting a more restrictive rule than that of the United States Supreme Court. *State v. Evans,* 258 Or 437, 442, 483 P2d 1300 (1971). But we cannot adopt a rule granting the state more freedom than the precedent declared by the United States Supreme Court and thereby override that court.

■ The statement in the affidavit that defendant was known to the affiant as a "trafficker in narcotics and dangerous drugs" is supported solely by the affiant's testimony, "Well, we have had information and stuff that he uses and sells, uh, marijuana and other items." In *Giordenello v. United States,* 357 US 480, 78 S Ct 1245, 2 L Ed 2d 1503 (1958), the court found the affidavit did "not provide any basis for the Commissioner's determination" as there was "no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not set forth any other sufficient basis * * *." 357 US at 486, 78 S Ct at 1250, 2 L Ed at 1510.

■ In the case at bar there is no explanation of how Officer Wilson knew that defendant was a trafficker in drugs; there is no testimony showing the source or reliability of the information on which he based his conclusion; and the record discloses that the defendant had no criminal convictions for such activities. In *State v. Dunavant,* 250 Or 570, 576, 444 P2d 1 (1968), we held:

"The rule that a search warrant affidavit may be based on hearsay is qualified by the requirement that there be in the affidavit a substantial basis for

crediting the hearsay. *Jones v. United States,* supra, 362 US 257, 80 S Ct 725, 4 L ed. 2d 697; *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L ed 2d 684 (1965); *Rugendorf v. United States,* 376 US 528, 84 S Ct 825, 11 L ed 2d 887, reh. den., 377 US 940 (1964); *Aguilar v. Texas,* supra; *State v. Tacker,* 241 Or 597, 407 P2d 851, 10 ALR3d 355 (1965)."

We conclude that the bare statement of the affiant affords no basis from which the justice of peace could draw an inference that defendant was a trafficker in drugs.

The defendant next contends that at the suppression hearing Officer Wilson "admitted on cross-examination the object he saw could have been an ordinary plastic container and he could not see what it contained, and he was not sure what defendant recovered from Graven * * *. These circumstances are hardly suspicious, let alone sufficient to constitute [probable] cause * * *."

The Court of Appeals' majority opinion described the event as follows:

"* * * We believe that when the drivers of two automobiles are observed pulling up abreast of each other, and one driver is seen passing a plastic baggie to the other driver in exchange for what reasonably appears to be money, we have a highly *suspicious transaction* * * *," and characterized the required content of the affidavit to be "reasonable ground for *suspicion,* supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a drug offense had been committed * * *." (Emphasis supplied.) 12 Or App at 88, 504 P2d at 1048 (1973).

This is not in accord with this court's decision in *State v. Ingram,* 251 Or 324, 326, 445 P2d 503 (1968), wherein

we stated, "[t]he evidence of probable cause must be more than would give rise to a mere suspicion * * *."

The trial court was faced with the situation where the affiant seeking the warrant admitted at the hearing to suppress that the facts stated in the affidavit were not essentially correct and were overstated. The affiant now admitted that "what appeared to be a baggie of marijuana" could have been an "ordinary plastic container" which he could not "see the contents of" and that he could not be certain that what the defendant received from Graven was money. The officer, removed from the expediency of the incident, and with more considered reasoning, admitted his mistake in making the assertions in his affidavit to the magistrate.

In *Theodor v. Superior Court, supra,* 501 P2d at 251, the court held:

"* * * [I]f statements contained therein are demonstrated to be false and if the affiant was unreasonable in believing the truth of such information, those facts must be excised from the affidavit and probable cause tested from the remaining truthful information."

█ We hold that a statement in an affidavit supporting a warrant must be removed if it is intentionally false. Negligent statements in an affidavit need not be excised, but we require that the entire supporting affidavit be re-examined in light of the controverting statements given at the hearing. Would the magistrate as a reasonable, cautious man have issued the warrant if he had known the correct facts and drawn the correct inferences in arriving at probable cause when he issued the warrant? The officer might have thought he was acting in good faith, but he admitted to overstating the

correct facts in his affidavit and therefore disrupted the normal inference-drawing process. As stated in *Beck v. Ohio*, 379 US 89, 97, 85 S Ct 223, 13 L Ed 2d 142 (1964), "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Accordingly, we conclude that the affidavit as corrected by the officer's testimony was, at best, a vague suspicion and did not constitute probable cause for the issuance of the search warrant.

Defendant's other assignment of error concerning the procedure and claimed irregularities at the time of sentencing need not be answered.

The judgment is reversed and the cause is remanded to the trial court.

HOLMAN, J., concurring.

The affidavit is sufficient upon its face. It alleges that the affiant, a state police officer, saw defendant hand to a third party what appeared to be a baggie of marijuana and receive money in return. From such statements the magistrate could conclude that the defendant was purveying marijuana from his vehicle and that it was probable the drug existed in the automobile.

The affidavit being sufficient upon its face, the resultant warrant and search were valid unless the accuracy of the facts therein could be controverted. Despite no formal motion to controvert having been filed under ORS 141.150 and 141.160 and no affidavit having been filed as required by *State v. Wright*, 266 Or 163, 511 P2d 1223 (1973), the accuracy of the statements in the affidavit was gone into fully and testi-

mony was taken concerning such accuracy. The matter was tried as if both parties were treating the defendant's motion to quash the affidavit and warrant as controverting the affidavit and no objection was made to so proceeding. The matter having been so tried and treated, this court should also so treat it, and we do not have to decide whether the motions filed, in the face of objection, were sufficient to test the accuracy of the affidavit.

The evidence at the hearing of the motion to quash showed that what the affiant had actually seen was the defendant passing a plastic bag to a third party and receiving what appeared to be money in return. With no knowledge other than this, there is insufficient information upon which to conclude that drugs were being passed. There is probably nothing that is used more as a receptacle for many things than a plastic bag. For all the affiant knew, defendant could have been passing a sandwich or fish worms to a third party and receiving their cost in return.

However, if the police had reliable information upon which to base a belief that defendant was a purveyor of drugs, the transaction observed by the officer would have had a completely different complexion, because all officers are aware that plastic bags are the containers usually used for marijuana. It, therefore, becomes important whether the statement in the affidavit that defendant was known to affiant to be a trafficker in narcotics and dangerous drugs could be considered in determining probable cause. It could not be so considered because the underlying information upon which affiant's knowledge was based was not disclosed to the magistrate. If the mere statement that the affiant knew the defendant's reputation to be that

of a dealer in drugs is sufficient, an affiant is able to raise the legal significance of what he otherwise says without the scrutiny of anyone. He, not the magistrate, determines probable cause. *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).

TONGUE, J., dissenting.

In my view, the majority opinion is an example of the maxim that hard cases sometimes make bad law. I cannot help but feel that the result in this case has been influenced by the fact that upon the search of defendant's car the officers found no more than one germinant seed of marijuana. Would the majority have reached the same result if, instead, the officers had found 10 pounds of uncut heroin or a stolen gun used in an unsolved murder, with identifiable fingerprints?

Or what if, during the days of prohibition, an officer saw a man "reputed" to be the local bootlegger handing "what appeared to be a whiskey bottle" to another person, receiving in exchange "something that was green" and "looked like money"? Would it not have been a revelation to law enforcement officers to be informed that they had no "probable cause" for arrest or for search of the automobile even without a search warrant, much less for the issuance of a search warrant for the automobile?

Such a conclusion would have required the officer to be able to swear under oath that the contents of the bottle was an illegal alcoholic beverage and that what "looked like money" was actually money, thus imposing requirements for the issuance of a search warrant that would have been impossible, as a practical matter. While yesterday's problems of illegal

liquor traffic may have been succeeded by today's problems of illlegal drug traffic, I cannot believe that the law relating to search warrants has changed to the extent suggested by the majority.

In considering cases involving motions to suppress evidence obtained by an allegedly invalid search warrant we must constantly remember that the Fourth Amendment of the Constitution of the United States extends only to *"unreasonable* searches and seizures." We must also bear in mind, as recognized by the majority, that in determining whether there was probable cause for the issuance of a search warrant, warrant affidavits are to be interpreted in a commonsense rather than a hypertechnical manner. *State v. McDonald,* 253 Or 533, 539, 456 P2d 80 (1969), quoting with approval from *United States v. Ventresca,* 380 US 102, 108, 85 S Ct 741, 13 L ed 2d 684 (1965). Also, we have recognized that although evidence of probable cause must be more than would give rise to a "mere suspicion," it can be "less than would justify an officer in making a search without a warrant." *State v. Ingram,* 251 Or 324, 326, 445 P2d 503 (1968).

In my judgment, the majority, while paying lip service to these well-established rules, has declined to apply them in this case. This affidavit for a search warrant stated three basic facts:

(1) That the defendant was "known" to the officer "as a trafficker in narcotics and dangerous drugs";

(2) That the officer observed defendant hand to Graven "what appeared to be a baggie of marijuana" and to be "the kind ordinarily used to contain marijuana"; and

(3) That the officer observed that defendant "receive[d] money in return."

■ *The "impressions" or opinions of the officer, based on firsthand observation, were not "controverted" by his subsequent admission that he could not be "certain" that they were correct.*

With reference to items (2) and (3), the majority holds that "assuming, without deciding, that this portion of the affidavit stating the officer's observation is sufficient to establish probable cause," these statements in the affidavit were "controverted" by the testimony of the officer on cross-examination at the time of trial. I do not agree.

First of all, no motion was filed by defendant for a hearing under ORS 141.150 to "controvert the ground of issuing the affidavit." Defendant's motion to suppress the evidence was upon the ground that "the affidavit is not sufficient," rather than that the statements in the affidavit had been "controverted" by testimony. Defendant's assignment of error on appeal to the Court of Appeals was that the trial court erred in denying that motion.

It is true that defendant's petition for review states that "review is warranted because the majority opinion [of the Court of Appeals] * * * relied upon the officer's affidavit even though he controverted it at the motion to suppress." The state's attorney contended on oral argument, however, that "there was never a motion to controvert * * * this was simply a motion to suppress. The grounds [sic] at no time urged that anything in the affidavit is factually false * * *. The whole basis is that the affidavit is not sufficient to authorize the search." In addition, there was no separate "suppression hearing," although it was stipulated that the issues raised by the motion to sup-

press be tried at the same time as the trial on the indictment.

On this record, it is my view that the sole question before this court is the sufficiency of the affidavit and that the question whether statements in the affidavit were "controverted" is not properly before this court in this case. Had that contention been made properly in the trial court the state might well have offered testimony to support and corroborate the statements in the affidavit.

Assuming, however, that this question is properly before this court, I do not agree that these statements in the affidavit were "controverted." The officer testified that what he said in his affidavit "appeared to be a baggie of marijuana," and to be "the kind ordinarily used to contain marijuana," "*could* have" been an ordinary "plastic container," and that he could not see its contents. He also testified that he could not be *certain* that what he saw "come back" was "money."

In my view, that testimony, while perhaps impeaching somewhat the credibility of the officer, did not so completely "controvert" the statements of the affidavit so as to destroy them. These statements in the affidavit were, in essence, expressions of the officer's "impression" or opinion that what he observed was the exchange of a marijuana "baggie" for money. As such, these statements would have had sufficient probative value so as to be admissible even on trial as the "shorthand rendering" of the "impression" or opinion of the officer based upon firsthand observation of the transaction. Such testimony is not shorn of all probative weight because the witness admits, on cross-examination, that he cannot be certain of the correct-

ness. of his "impression" or opinion. On the contrary, the determination of the credibility of such testimony in such an event is still for the trier of the facts. See McCormick on Evidence (2d ed) 20-22, § 10.

Moreover, it must be kept in mind that what we are primarily concerned with in this case is the sufficiency of the affidavit and the question whether or not it provided probable cause for the issuance of the search warrant. The effect of the opinion by the majority is to hold that an officer who is present during such a transaction must be able to testify under oath at a hearing to suppress such evidence or on trial of the case that he could positively identify, without equivocation, that a container alleged to contain unlawful drugs did in fact contain unlawful drugs and that what he observed to be passed in exchange for such a container was in fact, "money." Such a requirement would be completely unworkable and one which would impose an impossible burden on law enforcement officers.

But even if the statements in the affidavit relating to the "baggie" and the "money" be considered insufficient, standing alone, it is my opinion that the majority is incorrect for a more fundamental reason. This relates to the "reputation" statement in the affidavit (item (1)) and the holding by the majority that "the bare allegation in the affidavit that the defendant was known as a trafficker in drugs gives no additional weight to what the officer observed" and "is entitled to no weight in appraising the magistrate's decision."

■ *The reputation of the defendant as a "trafficker in drugs" was a relevant fact and as such, was entitled to consideration, along with other facts and*

*circumstances, in determining the existence of probable cause and could not be totally disregarded.*

The basic error by the majority, in my judgment, is its assumption that this court is bound by the decision of the United States Supreme Court in *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L ed 2d 637 (1969). In *Spinelli* it was held (at 418-419), by a divided court, that the statement in an affidavit for the search warrant that defendant was "known" to the FBI and others as a gambler was completely irrelevant and added no weight to the affidavit. Justice Black dissented on the ground that the majority opinion in *Spinelli* was an "indefensible departure from the principles of our former cases." Justice Stewart and Justice Fortas also dissented and Justice Marshall took no part in the case.

More recently, in *United States v. Harris,* 403 US 573, 91 S Ct 2075, 29 L ed 2d 723 (1971), Chief Justice Burger, in writing the opinion for the majority of the court, had this to say about *Spinelli* (at 582):

> "* * * In Spinelli * * * the Court rejected as entitled to no weight the 'bald and unilluminating' assertion that the suspect was known to the affiant as a gambler. 393 US, at 414, 21 L Ed 2d at 643. For this proposition the Court relied on Nathanson v. United States, 290 US 41, 78 L Ed 159, 54 S Ct 11 (1933). But a careful examination of Nathanson shows that the Spinelli opinion did not fully reflect the critical points of what Nathanson held since it was limited to holding that *reputation, standing alone, was insufficient*; it surely did not hold irrelevant when supported by other information. * * *" (Emphasis added)

Two members of the court expressly concurred in that part of the opinion by Chief Justice Burger.

Two other members of the court concurred in the opinion, but did not expressly either agree or disagree with the proposal that *Spinelli* be overruled. Thus, it was not necessary in *Harris* to decide whether or not to overrule *Spinelli* because of other and independent grounds for that decision.

In my view, however, *Spinelli* is not only bad law, but the opinion by Chief Justice Burger in *Harris*, as well as the present trend of the decisions by the United States Supreme Court, leads me to the belief that *Spinelli* will be overruled when that issue is squarely presented to the court.[1]

In recent years we have not hesitated to decide criminal cases involving questions of constitutional law upon what we believe to be the correct rules of law. See *State v. Douglas*, 260 Or 60, 488 P2d 1366 (1971), holding that a "Miranda warning" is not required before a so-called "consent search"—a rule later ap-

---

[1] In addition, it is important to note that *Spinelli* was not a case in which the affidavit for the search warrant was based upon personal observation by the officer of the alleged criminal activity, combined with his knowledge of defendant's reputation as in this case. Instead, both *Spinelli* and *Harris* were cases in which the primary basis for the affidavit was the tip of an informer, combined with the reputation of the defendant, thus presenting the problem of whether there was a sufficient showing of the reliability of the informer. Indeed, Justice Harlan, in his dissenting opinion in *Harris* (at 597) to the effect that evidence of defendant's reputation was not sufficient to establish the credibility of the informant in that case, was careful to point out (at 587) that *Harris* was not a case in which "the officer observed that activity himself." Similarly, the problem considered in *Spinelli* was whether an informer's tip had been sufficiently corroborated and whether the reputation of the defendant had any probative value for that purpose. This basic distinction in the nature of the problem presented in this case, as compared with the problem presented in *Spinelli*, is a further reason why that decision is not controlling in this case, even if good law as applied to the problem presented in that case, contrary to the subsequent opinion by Chief Justice Burger in *Harris*.

proved by the United States Supreme Court in *Schneckloth v. Bustamonte,* 412 US 218, 231, 93 S Ct 2041, 36 L ed 2d 854, 865 (1973). See also *State v. Brewton,* 247 Or 241, 422 P2d 581 (1967), stating a rule more restrictive than that subsequently adopted by the United States Supreme Court in *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L ed 2d 1 (1971). As a result, it is my view that this court should decide for itself what it believes to be the correct rule of law for application in this case, leaving it to the United States Supreme Court to reverse us if that court should disagree.

The rationale of the opinion by Chief Justice Burger in *Harris,* as stated in *US v. Harris,* supra at 583, is that:

> "We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that Spinelli prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation."

This view is consistent with that taken by Justice Black, dissenting, in *Spinelli,* as stated at 431:

> "The petitioner was known by federal and local law enforcement agents as a bookmaker and an associate of gamblers. I cannot agree with the Court that this knowledge was only a 'bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision.' *Ante,* at 414; 21 L ed 2d at 643. Although

the statement is hearsay that might not be admissible in a regular trial, everyone knows, unless he shuts his eyes to the realities of life, that *this is a relevant fact which, together with other circumstances, might indicate a factual probability that gambling is taking place.*" (Emphasis added)

Indeed, evidence of reputation has long been considered to be admissible as a relevant fact not only for the purpose of impeachment of witnesses, but also as substantive evidence in the trial of many types of criminal cases on their merits, where the standard of proof is much higher than mere probable cause. Cf. *United States v. Harris, supra* at 584.

A few examples should suffice:

In rape cases evidence that the reputation of the prosecuting witness for chastity is bad is admissible for consideration by a jury on the issue of whether she was ravished by force or consented to intercourse. See *State v. Ogden,* 39 Or 195, 208, 65 P 449 (1901). Cf. 5 Wigmore on Evidence (3d ed) 495, § 1620.

In cases involving the keeping of houses of prostitution, evidence of the reputation of defendant as the owner of such a house is admissible. *State v. McGinnis,* 56 Or 163, 167-168, 108 P 132 (1910). Cf. 5 Wigmore, *supra,* 496-497, § 1620.

In cases of homicide or assault and battery in which self-defense is claimed to be a defense, evidence of the known reputation of the alleged assailant as a violent and dangerous person is admissible on the issue whether the defendant had reason to apprehend an attack (i.e., "probable cause" to strike the first blow). See 2 Wigmore on Evidence (3d ed) 52, § 246. Cf. *State v. Selby,* 73 Or 378, 380, 144 P 657 (1914).

For numerous other examples, see 2 Wigmore,

*supra,* 43-83, §§ 244-259; 5 Wigmore, *supra,* 443-510, §§ 1580-1626; and McCormick on Evidence (2d ed) 595, 749-750, §§ 249, 324.

In my opinion, these authorities provide ample support for the proposition that "a policeman's knowledge of a suspect's reputation" cannot be properly ignored, as was done in *Spinelli,* but is a "practical consideration of everyday life," to use the words of Chief Justice Burger in *Harris,* and as such is entitled to consideration, on the issue of probable cause for the issuance of a search warrant. For the same reasons, as pointed out by Black, J., dissenting in *Spinelli,* the reputation of the defendant as a bookmaker and a gambler, as in that case, or as a trafficker in drugs, as in this case, is a "* * * relevant fact which, together with other circumstances, * * *" might indicate the "factual probability" required for a showing of probable cause for the issuance of a search warrant, at least in narcotic cases, such as this.

Even assuming that there would be no probable cause for the issuance of a search warrant to search the automobile of an ordinary person observed to hand what appeared to be a "baggie of marijuana" and receive in return what appeared to be "money," when the person who is observed to engage in such a transaction has the reputation of being a "trafficker in narcotics and dangerous drugs," I would hold that a magistrate could properly find probable cause for the issuance of a warrant for the search of the automobile of such a person.

For all of these reasons I cannot agree with an opinion which embraces the rule of *Spinelli* as a correct statement of the law and as stating a rule that is binding on this court.

Finally, the majority says that the statement by the officer that the defendant was "known" to him to be such a person was also "controverted" by his testimony at the time of trial.

The statement by the officer in his affidavit that defendant was "known to me as a trafficker in narcotics and dangerous drugs" was, in effect, a statement that he knew that to be defendant's reputation and is so considered by the majority in its discussion of that statement in the light of *Spinelli* and *Harris*. The "reputation" of a person is "the opinion which others have formed and expressed of his character." 5 Wigmore, *supra*, 477, § 1608. It may be that this statement by the officer in his affidavit would have been "controverted" if the officer had been asked whether he had ever discussed defendant's reputation with anyone and had stated that he had never done so. See 5 Wigmore, *supra*, 486, § 1614.

No such question was asked, however, but only the question "What, if anything, did you know about him?" In response to that question, the officer testified that "* * * we have had information * * * that he uses and sells * * * marijuana * * *." That testimony in no way "controverts" his prior statement as a statement of defendant's reputation. If anything, that testimony tends to corroborate rather than to "controvert" his prior statement and no attempt was made on cross-examination to inquire as to the nature or sources of such information.

In any event, as previously stated, the sole question raised by defendant's motion to suppress was the sufficiency of the affidavit. The question whether

the affidavit was "controverted" by testimony on trial is not properly before this court in this case.[2]

For all of these reasons, I must respectfully dissent from the opinion by the majority and would affirm the decision by the Court of Appeals that there was probable cause for the issuance of a search warrant in this case.

I would, however, reverse that decision to the extent that it would refuse to remand the case for resentencing. I believe that defendant is correct in his contention that the fine of $1,000, with a jail sentence of 90 days and probation for five years, as imposed by the trial court, was an excessive penalty for the possession of one marijuana seed, particularly in view of the action subsequently taken by the 1973 Legislature, under which the maximum penalty for that act would be a fine of not more than $100. (Oregon Laws 1973, ch 680, ORS 167.207.)

HOWELL, J., joins in this dissent.

---

[2] As also previously pointed out, this case does not present the problem of whether the reliability of an informer's tip has been sufficiently established by reference to other independent facts. (See footnote [1]) The statement of an officer that a defendant has a reputation of being a drug pusher or bootlegger, and the reliability of such a statement, presents a different problem because knowledge of the reputation of a person must be based upon the opinions formed and expressed by other persons, rather than upon personal knowledge of the defendant or of his conduct or upon information relating to specific acts of prior misconduct. See 5 Wigmore on Evidence (3d ed) 477, 482, §§ 1608, 1612.