Argued and submitted July 19, 1985, affirmed June 11, reconsideration denied August 1, petition for review denied September 16, 1986 (301 Or 765)

# STATE OF OREGON,
## *Respondent,*

*v.*

# PAUL LYNN MIDDLETON,
## *Appellant.*

(8309 2069; CA A33792)

720 P2d 1310

Relan Colley, Corvallis, argued the cause for appellant. With him on the brief was Colley & Colley, Corvallis.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Pro Tempore, and Joseph, Chief Judge, and Young, Judge.

GILLETTE, P. J., Pro Tempore.

Joseph, C. J., dissenting.

## GILLETTE, P. J., Pro Tempore

Defendant appeals his conviction for manufacture of a controlled substance. ORS 475.992. He assigns as error, *inter alia,* the trial court's denial of his motion to suppress evidence seized from his property pursuant to a warrant.[1] We affirm.

A search warrant was issued on the basis of this affidavit:

"That I am a Linn County Deputy Sheriff and have been a police officer for seventeen (17) years.

"That on September 12, 1983, I flew over the property located at 40774 Edwards Drive, Lebanon, Oregon, after being informed by Art Martinak, Linn County Under Sheriff, that Paul Middleton who resides at the above address had, earlier this year bought 300 pounds of bone meal from Bib 'B' Farm Supply, Albany, Oregon. I have received training and instruction in the identification and recognition of marijuana including the chemicals and substances used to grow marijuana. In this training I have learned and observed that bone meal is commonly found added to the soil at the base of marijuana plants. I observed at the above property a greenhouse with contents that were green and it appeared there was a lot of moisture on the ceiling with dark spots which based on my personal experience is caused by something touching the ceiling.

"On September 16, 1983, at 2:00 p.m. Linn County Detective Gary Horton and I drove to the property immediately east of 40774 Edwards Drive, Lebanon, Oregon, which had the address of 40790. From this driveway I looked west and saw, approximately 250 feet away the same greenhouse I had previously seen from the air which greenhouse was attached to the back of a cement block building. The block building had aluminum foil covering the windows which face Edwards Drive. It has been my experience as a police officer and in many cases I have investigated I have personally observed in places where marijuana is grown the grower often covers the windows and interiors with aluminum foil to reflect and or retain the heat and conceal the contents from view. In the greenhouse I can see something green. I also observed another building behind the residence which has the entrance covered by a green tarp and that the windows had also been covered over. The coverings are consistent with what I have learned

---

[1] The other assignments of error do not require discussion.

and observed in regard to growing or drying marijuana operations.

"I turned around and drove back down this driveway and on to Edwards Drive where I was approached by Paul Middleton who wanted to know what I was doing there and wanted to talk to me. As we talked I identified myself as a detective with the Linn County Sheriff's Office and that I believed Mr. Middleton was growing marijuana in the greenhouse. Mr. Middleton said he knew why we were there and believed we had been checking on him for a week. As we talked Mr. Middleton stated his 'garden' was very small, he is crippled, he and his wife are without work and why did'nt [sic] I leave him alone. During this conversation I told him he could consent to a search and he could limit such a search to specific areas. I also told him I had other ways. Mr. Middleton told me that he got involved with 'pot' after being treated by a doctor in Portland following a leg injury. That he suffered a lot of pain. Pot is a street term very often used to mean marijuana. He also said that if I left there it would be burned. He further told me he would give me the name of the biggest dope dealer in the State of Oregon if I would leave him alone. He later stated I can give you two guys one from San Francisco and one from the Roseburg area who deal cocaine, i.e. 'Turk' and 'Dick Brown'. I told him I could not 'deal' with him and if I would be allowed to search and if marijuana was found I would have to arrest him; only the District Attorney could make any deals. He then went into the house to get the name of a dealer in Roseburg. When Middleton returned he gave me the name 'Jim Morgan, telephone number 424-5065'. I told him I would have to do my job. Middleton then walked away.

"I left enroute to the Courthouse leaving two deputies at the road and on adjoining property to observe the premises to insure no fires were set in the block house or green house.

"At 3:45 p.m. I spoke by telephone with Keith James Louder, employed by City of Albany who lives at 40790 Edwards Drive, Lebanon. Louder said he has seen the greenhouse, did not know what was in it, but that Middleton keeps very close watch over both his own and Louder's property and challenges, by asking what business they have of nearly everyone who goes up Louder's driveway. He has seen Middleton walking around his property with a machette, [sic] but never working up a sweat such as would occur if he was cutting brush.

"Based on my observations and on my conversation with Mr. Middleton, I have probable cause to believe there is being

concealed in the above described buildings marijuana and implements and devices, substances to grow it and evidence of growing marijuana. It has been my experience as a police investigator (except for one case) that whenever a person has been or is growing marijuana that person will have dried or drying marijuana in his or her residence, and I therefore hereby make application that a search warrant issue authorizing a search of the premises or persons for the things, as above described, and if any of them are found, authorizing seizure of the same."

Defendant's motion to suppress included a motion to controvert the affidavit on certain points: whether there had been a purchase of bone meal by defendant and whether the conversation between defendant and the affiant was substantially different from that related by the affiant. The trial court's only finding relating to the bone meal was that there was no indication as to whether the affiant's informant was personally aware of defendant's purchasing it or whether he had received that information from someone else. That finding fails to resolve the question raised by defendant, but it is of no matter. Bone meal is customarily used for legitimate purposes, and the purported purchase asserted in the affidavit does not affect our determination of probable cause. The trial court also found that, contrary to the statements in the affidavit, no reference to "pot" occurred during the conversation between the affiant and defendant. Therefore, the court deleted generally "the matters relating to involvement with pot," without further specificity.

■  In determining whether probable cause existed to support the issuance of a search warrant, the court explained that it had looked to the hearing testimony by the affiant, as well as to the testimony of his police partner. On the basis of that information and the affidavit, the court determined that probable cause existed and denied the motion to suppress. In using that approach, the court erred. In *State v. Harp,* 299 Or 1, 9, 697 P2d 548 (1985), the Supreme Court reiterated the process for reviewing the sufficiency of a search warrant affidavit. If the defendant proves that it contains inaccuracies, the court must delete the controverted facts and cannot insert additional facts. It must assess the sufficiency of the affidavit on the basis of the remaining accurate facts. The trial court thus erred in this case when it. relied on the testimony in

addition to the facts in the affidavit to determine that probable cause existed.

On review, we look only to the evidence that was properly before the magistrate, without the successfully controverted facts. We are bound by the trial court's factual findings concerning what was successfully controverted. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). After deletion of the statements relating to defendant's involvement with pot, the question becomes a very close one. However, we are of the view that the remaining facts do establish probable cause. In an aerial view, the affiant, who had training and experience with respect to the recognition of and methods of growing marijuana, saw a greenhouse on defendant's property, which contained green plants and had moisture and dark spots inside the roof. The affiant saw aluminum foil over the windows of a cement block building attached to the greenhouse and saw another building with a covered entrance and windows. That was all consistent with, among other things, a clandestine marijuana growing operation. In a conversation, defendant stated that he knew why the officers were there, that he believed they had been checking on him for a week, that he had a small garden and that he wondered why they did not leave him alone. He then offered to give the deputy the name of the "biggest dope dealer" in the state if the deputy would leave him alone. The deputy replied that he could not make deals and that he would have to do his job. Defendant gave the affiant two names of people believed to be cocaine dealers and the name of a dealer from Roseburg. We think that the judge who issued the warrant was entitled to infer from the foregoing that the "garden" defendant referred to was marijuana. If it were tomatoes or rutabagas, defendant would not have defended the garden's size or attempted to buy off the officers by turning their attention to supposedly bigger fish.

As stated in *State v. Anspach,* 298 Or 375, 381, 692 P2d 602 (1984), the probable cause requirement means that the facts supporting a warrant application "must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." At the same time, affidavits should be read in a commonsense, realistic way. *See State v. Villagran,* 294 Or 404, 408, 657 P2d 1223 (1983). The

state has established probable cause to believe defendant was a hot house marijuana grower.

Affirmed.

**JOSEPH, C. J.,** dissenting.

Although I would recite what is left of the affidavit somewhat differently than the majority does, and thereby show that it is even weaker than the majority acknowledges, I cannot accept the majority's result, even on its view of the facts shown. The facts in the edited affidavit are as consistent with legitimate activities as with illegitimate ones. Nothing indicates any connection between defendant and marijuana, and the affidavit does not support the level of belief required to show probable cause. Suspicion, however strong, is just not enough.