Argued and submitted December 30, 1992, convictions affirmed; conditions of probation vacated in part and remanded for resentencing June 9, reconsideration denied August 11, petition for review denied September 21, 1993 (317 Or 584)

# STATE OF OREGON,
*Respondent,*

*v.*

# ERIC THORFINNSON,
*Appellant.*

# (91CR0181; CA A72247)

853 P2d 1368

Mary M. Reese, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant was convicted on three counts of manufacture, delivery and possession of a controlled substance. ORS 475.992(1) and (4). He appeals, assigning error to the trial court's rulings on his motion to controvert and motion to suppress and to the court's sentencing dispositions. We affirm the convictions but remand for resentencing.

After stating his training and experience in narcotics investigation, Officer Huffman stated in his affidavit in support of a search warrant:

"In December 1990, myself [*sic*] and Detective Barbero started working with an individual, herein referred to as CI/ citizen informant.[1] CI wishes to remain anonymous for CI's protection. CI fears for CI's life if CI is identified. *CI voluntarily came forward with information regarding local drug traffickers, one of these individuals was identified as [defendant].*

"CI has further provided information concerning criminal activities of persons within the community which we have corroborated and otherwise know to be factual information. CI has two prior arrests for controlled substances, but has no pending criminal charges. During my conversations with CI, CI has demonstrated that CI is thoroughly familiar with the appearance, packaging, price, and use of marijuana.

"CI stated that CI could purchase marijuana from [defendant] and had purchased marijuana from [him] in the past. Since December of 1990, CI has made more than four drug buys from [defendant] under my direct supervision and that of Detective Barbero's [*sic*].

"During all of the controlled buys, the controlled substance was identified that CI said that CI could purchase. CI was furnished with buy money and searched prior to going to [defendant's] residence. CI was followed to the area of [defendant's] residence (the start of BLM Road #40-7-11) and followed from the area of [defendant's] residence. CI then met myself [*sic*] and Detective Barbero at a prearranged location, and on all occasions CI turned over to myself [*sic*] and Detective Barbero marijuana that CI said CI could purchase at [defendant's] residence. I personally examined the substances on all occasions and confirmed that it was marijuana. On one of the controlled buys, CI said that

---

[1] We also refer to the informant as "CI" throughout the opinion.

additional subjects arrived and purchased marijuana. CI gave a description of the subjects and vehicles. These descriptions were confirmed by my observation and that of Detective Barbero while we were waiting for CI to complete the controlled buy. On each occasion CI arrived at [defendant's] residence unannounced and marijuana was always readily available; CI observed more than one pound of marijuana remaining at [defendant's] residence during each of these controlled buys. CI has been present at [defendant's] residence on at least three other occasions within the past four months when other individuals have purchased marijuana from [defendant]. The fourth controlled marijuana buy occurred within the last four days.

"CI stated that [defendant] lived on BLM Road 40-7-11 and in the first residence on the left hand side. CI said this was a single story wood structure with a garage. Using CI's directions, I drove to this area, which can be reached by travelling on Holland Loop Road in Cave Junction to Althouse Creek Road. Proceed up Althouse Creek Road to BLM 40-7-4. Turn left on 40-7-4 and travel approximately 2.5 miles to BLM Road 40-7-11. Turn left on BLM Road 47-7-11 [*sic*], and proceed for approximately 1.9 miles. [Defendant's] residence is the first residence on the left hand side. I personally drove by this residence on January 13, 1991 and confirmed the above descriptions: the dwelling is a single story wood structure with an attached garage, composition roof, and natural wood siding, and sits approximately 50 feet off the road in plain view.

"CI was administered a polygraph examination by Detective Lasater of the Josephine County Sheriff's Office Major Crime Unit, who is also a licensed polygrapher in the State of Oregon. * * * *Detective Lasater informed me that CI passed the polygraph examination in regards to CI making the controlled buys from [defendant's] residence and controlled substances always being readily available at [defendant's] residence.*" (Emphasis supplied.)

A warrant was issued on the basis of the affidavit. Police searched defendant's residence and found drug evidence that was the basis of his convictions. Defendant moved to controvert the affidavit and to suppress the evidence found pursuant to the warrant. The trial court denied both motions, except that it excised the words "the" and "always" from the last emphasized language in the affidavit.

Defendant first assigns error to the trial court's refusal to allow him to question Huffman concerning the truthfulness of the statement that "CI *voluntarily* came forward with the information regarding local drug traffickers [including defendant]." (Emphasis supplied.) He argues that denying him the opportunity to question was a denial of due process. We need not decide whether he is correct because, as we discuss below on the issue concerning the motion to suppress, even if the statement should have been excised — the only remedy defendant could have obtained had he prevailed on his supplemental motion to controvert — the remainder of the affidavit established the CI's veracity and supported a finding of probable cause. *See Franks v. Delaware*, 438 US 154, 171, 98 S Ct 2684, 57 L Ed 2d 667 (1978).

Defendant next assigns error to the trial court's ruling on the affiant's statement that the "CI passed the polygraph examination in regards to CI making *the* controlled buys from [defendant's] residence and controlled substances *always* being readily available at [defendant's] residence." (Emphasis supplied.) The evidence shows that the polygraph examination related to only two, rather than to all four, controlled buys. The state conceded that the word "the" was misleading, in that it could be interpreted to mean all four controlled buys. On the basis of the polygraph examiner's testimony, the state also conceded that the word "always" was inaccurate and should be deleted. The trial court excised the words "the" and "always" from the affidavit.

Defendant argues that the court should have excised the entire sentence concerning the polygraph examination. He relies on *State v. Harp*, 299 Or 1, 9, 697 P2d 548 (1985), which stated that "the judge's assessment [in ruling on a motion to controvert] is a process of subtraction, not addition." Defendant reads *Harp* too broadly. It does not stand for the proposition that, once an inaccuracy is found in a sentence, the entire sentence must be excised, regardless of whether part of it is accurate. Rather, it rejected the suggestion in *State v. McManus*, 267 Or 238, 517 P2d 250 (1973), that the judge could rely on evidence outside the affidavit to consider whether the affidavit contained probable cause. Here, the trial court apparently

considered the affiant's statement concerning the polygraph examination as partly inaccurate and then excised the words "the" and "always," which were the source of that inaccuracy. It did not insert any new information into the affidavit, for example, by replacing "the" with "two." *See State v. Middleton*, 79 Or App 794, 798, 720 P2d 1310, *rev den* 301 Or 765 (1986), *appeal dismissed* 480 US 913 (1987). The court did not err.

■ Defendant also assigns error to the trial court's denial of his motion to suppress. His argument is that the affidavit failed to establish the veracity prong of the *Aguilar/ Spinelli* test. *See State v. Carlile*, 290 Or 161, 163, 619 P2d 1280 (1980). We disagree.

■ The veracity prong of the *Aguilar/Spinelli* test can be demonstrated by facts showing either that the informant is credible *or* that the information is reliable. ORS 133.545(4); *State v. Carlile, supra*, 290 Or at 164; *State v. Young*, 108 Or App 196, 201, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992). There was information in the affidavit from which the magistrate could conclude that the CI was credible and that the CI's information was reliable. The affidavit stated that "CI had provided information concerning criminal activities of persons within the community which we have corroborated and otherwise know to be factual information." That is one factor showing the CI's credibility. *State v. Young, supra*, 108 Or App at 201; *State v. Smith*, 51 Or App 777, 780, 627 P2d 26, *rev den* 291 Or 151 (1981). Other indicia of the CI's credibility include the facts that the CI had successfully passed polygraph examinations and had no pending criminal charges. *State v. Coffey*, 94 Or App 94, 99, 764 P2d 605 (1988), *aff'd* 309 Or 342, 346, 788 P2d 424 (1990). Even if those indicia were insufficient to show credibility, the CI's information was reliable through independent corroboration. The affidavit recites that the CI had participated in four controlled drug buys. The CI was searched and furnished with money before proceeding to defendant's residence. Police followed the CI to, and then from, the area of that residence and met the CI at a prearranged location. On each occasion the CI turned over to the affiant quantities of marijuana that the CI claimed to have purchased from defendant. Those facts provide sufficient corroborative evidence. *See, e.g., State v. Wilson/Helms*,

83 Or App 616, 622, 733 P2d 54, *rev den* 303 Or 172 (1987); *State v. Thacker*, 9 Or App 250, 254, 496 P2d 729 (1972). Other factors adding to the reliability of the CI's information include independent corroboration of the CI's description of defendant's residence and other subjects and vehicles that were involved in one of the controlled buys. Viewing the affidavit in a common sense, realistic fashion, and excluding the affiant's statement that "CI voluntarily came forward with" drug information about defendant, we conclude that it contained probable cause for the magistrate to believe that marijuana would be found in defendant's residence.

■      In his last assignment, defendant argues that the trial court erred in delegating its sentencing authority to the Department of Corrections. On each count, the trial court imposed a probationary sentence, with special conditions that defendant serve 120 custody units each on the manufacture and delivery convictions and 90 custody units on the possession conviction, as *"directed by Department of Corrections."* (Emphasis supplied.) The state concedes that nothing in the sentencing guidelines authorizes the court to impose the custody units in the manner that it did here. OAR 253-05-012(3); *see also State v. Shefler*, 118 Or App 536, 847 P2d 417 (1993). We agree. On remand, the court must determine how the custody units ordered are to be used, in accordance with OAR 253-05-012(3).[2]

Convictions affirmed; special conditions of probation relating to custody units vacated and remanded for resentencing.

---

[2] At the sentencing hearing and also in its original judgment dated October 7, 1991, the trial court designated a portion of the custody units as jail time. OAR 253-05-013(1). However, its amended judgment does not reflect that.