Argued and submitted January 29, affirmed and remanded March 26, 1985

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## JANIE LEA HARP,
*Respondent on Review,*

(10-79-08181); CA A24954)

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## GRANDVILLE GENE HARP, JR.,
*Respondent on Review.*

(10-79-08180; CA A25012)
(SC S30918)

697 P2d 548

Steven F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. On the petition and brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Robert E. Barton, Assistant Attorney General, Salem.

Dan A. Neal, Eugene, argued the case of respondents on review. With him on the brief was Neal and Krambs, Eugene.

ROBERTS, J.

## ROBERTS, J.

The question is whether probable cause existed to support issuance of the search warrant for a search of defendants' home.

Defendants moved, at a consolidated hearing before the trial court, to controvert the affidavit supporting a search warrant issued for the search of their home. The trial court suppressed the evidence seized pursuant to the warrant in both cases.[1] The cases were consolidated on the state's appeal to the Court of Appeals.

The affiant, the police officer whose statements were the basis for issuance of the search warrant, submitted the following factual information by affidavit, in addition to his training and experience in marijuana detection: He saw growing marijuana, both with the aid of binoculars and with the naked eye, from a vantage point on a publicly traveled forest service road. The road bordered defendants' property. The marijuana was located on defendants' 49.82 acre parcel. No other residences were located on the property. The affiant could not see defendants' house from his vantage point but could see "a portion of the roofline" of defendants' residence. In the affiant's experience, evidence of marijuana cultivation and marketing would be found in the home of individuals who grow marijuana "in and around their residences * * *." The magistrate issued a search warrant for defendants' residence on the basis of this information.

As a result of the hearing on the motion to controvert, the trial court found a number of factual omissions and mistakes in the affidavit. In particular, the court found that the affiant failed to disclose that the distance between the marijuana and the residence was approximately three-eighths of a mile; that, after a number of trips to the vantage point, there was no evidence of human activity in the area, no evidence of trips between the plants and the residence and no path or roadway between the two. The affiant had stated that the marijuana was identified with binoculars when, in fact, the affiant used a high power spotting scope; and the road from

---

[1] In *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980) *(Harp I),* the Court of Appeals reversed the first suppression order but left open the availability of a motion to controvert on remand. This proceeding followed.

which the affiant viewed the marijuana was farther from defendants' property, not on the border, as stated. The judge concluded that these omissions and mistakes disrupted the magistrate's inference drawing process. The trial judge reasoned:

> "[T]he affiant misstated a number of matters in the affidavit and failed to include in the affidavit matters which, if included, would have substantially altered the fact pattern upon which the magistrate reached his decision of probable cause.

> "These omissions and mistakes were for the purpose of presenting to the magistrate the most favorable picture possible for obtaining the relief sought."[2]

Following the hearing on the motion to controvert, the trial court examined the affidavit in light of the accurate evidence and found no probable cause to support the warrant. The Court of Appeals affirmed. *State v. Harp,* 68 Or App 666, 685 P2d 432 (1984) *(Harp II).* We affirm.

The state questions both the method by which the court evaluated the affidavit after the motion to controvert

---

[2] The trial court found the following factual discrepancies:

"(1) The statement that the marijuana could be identified from the officer's viewpoint with binoculars when, in fact, identification could not be made until a much, much stronger spotting scope was employed.

"(2) The viewpoint of the affiant did not border on the subject property but was some distance therefrom, this misstatement contributing to an overall impression that the affiant was closer to the location of the marijuana and other parts of the defendant's property and thereby was more accurately able to observe and describe the scene.

"(3) The distance from the growing marijuana to the residence was not mentioned although evidence available to the officer and at the controverting hearing was that it was three-eighths to three-fourths of a mile. The wording of the third paragraph of the affidavit conveys the impression to the reader that the residence and the growing marijuana were in the same general area of the property whereas this was known not to be the case. The affiant failed to mention that a number of trips were made to the viewpoint and the property placed under observation, but that at no time was there seen any human activity in the area of the marijuana plants and no evidence of any trips between the marijuana area and the residence or that there was no evidence of a path or roadway between the residence and the observed marijuana.

"By reason of the failure to provide the above information, the magistrate's inference drawing process has been disrupted. Upon reexamination of the affidavit as modified by the above, I find there was not probable cause to support a warrant to search the residence and the area immediately around it."

and the standard by which the trial and appellate court reviewed the magistrate's decision to issue the search warrant. The state asserts that the lower courts should have evaluated omissions differently from incorrect assertions of fact in ruling on the motion to controvert. The state also suggests that, as a matter of federal Fourth Amendment law, reviewing courts should pay deference to the issuing magistrate's determination of probable cause.

In Oregon these questions are not answered initially with reference to federal or state constitutional jurisprudence. Pretrail motions to suppress evidence claimed to have been seized unlawfully, either pursuant to or in the absence of warrants, are regulated by statute. ORS 133.673 through 133.703.

In *State v. McManus*, 267 Or 238, 517 P2d 250 (1973), we examined former ORS 141.150 and 141.160[3] and held that these statutes allowed a defendant to contest the accuracy of an affidavit by motion to suppress without first filing a motion to controvert. We then proceeded to evaluate the affidavit in light of all the evidence adduced at the suppression hearing. Relying on the California case of *Theodor v. Superior Court,* 8 Cal 3d 77, 104 Cal Rptr 226, 501 P2d 134 (1972), we held:

"[A] statement in the affidavit supporting a warrant must be removed if it is intentionally false. Negligent statements in an affidavit need not be excised, but we require that the entire

---

[3] ORS 141.150 and 141.160 provide:

ORS 141.150:

"If the person from whose possession the property was taken controverts the grounds of issuing the warrant, the magistrate shall proceed to examine the matter by taking testimony on relation thereto."

ORS 141.160:

"If it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing that the grounds on which the warrant was issued exist, the magistrate shall cause the property to be restored to the person from whom it was taken."

Although these statutes speak only to the restoration of property wrongfully seized, they appear to have been the acceptable vehicle by which to suppress evidence as well as to seek its return. *State v. Flett,* 234 Or 124, 129, 380 P2d 634 (1963); *see also* Oregon Criminal Law Handbook § 20.58 (1969).

Some form of statutory proceeding to controvert an affidavit has been in existence since the earliest codification of Oregon laws. *See* Sections 481 and 482 of the General Laws of Oregon, 1843-1872.

supporting affidavit be re-examined in light of the controverting statements given at the hearing. Would the magistrate as a reasonable, cautious man have issued the warrant if he had known the correct facts and drawn the correct inferences in arriving at probable cause when he issued the warrant?" 267 Or at 251.

The 1973 revisions of the criminal procedure code which became effective after the *McManus* decision,[4] now provide separate procedures for return of property and suppression of evidence. ORS 133.643 sets forth the method for return or restoration of property if, among other reasons, the "things seized were not in fact subject to seizure under ORS 133.525 to 133.705 [the search and seizure statutes] * * *."[5] In addition, ORS 133.673 through 133.703 regulate motions to suppress evidence. Included among these statutes is ORS 133.693 governing motions to challenge affidavits. Subsection (1) of that statute provides:

"Subject to the provisions of subsection (2) of this section, in any proceeding on a motion to suppress evidence the moving party shall be entitled to contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure."

---

[4] *State v. McManus,* 267 Or 238, 247-48, 517 P2d 250 (1973), noted that the proposed draft of the new criminal procedure statutes allowed defendants to controvert an affidavit by motion to suppress in the same way that *McManus* did.

[5] ORS 133.643, enacted in 1973, provides in full:

"A motion for the return of restoration of things seized shall be based on the ground that the movant has a valid claim to rightful possession thereof, because:

"(1) The things had been stolen or otherwise converted, and the movant is the owner or rightful possessor; or

"(2) The things seized were not in fact subject to seizure under ORS 133.525 to 133.703; or

"(3) The movant, by license or otherwise, is lawfully entitled to possess things otherwise subject to seizure under ORS 133.525 to 133.703; or

"(4) Although the things seized were subject to seizure under ORS 133.525 to 133.703, the movant is or will be entitled to their return or restoration upon the court's determination that they are no longer needed for evidentiary purposes; or

"(5) The parties in the case have stipulated that the things seized may be returned to the movant."

ORS 133.653 was added in 1973 as well. Subsection (1) provides:

"(1) In granting a motion for return or restoration of things seized, the court shall postpone execution of the order until such time as the things in question need no longer remain available for evidentiary use."

The standard for suppression in motions to controvert is set forth at subsection (5): "The court shall determine whether, under applicable law, any inaccuracy, untruthfulness or lack of good faith requires suppression."[6]

As originally drafted, the statute allowed the moving party to contest only "the good faith of the affiant with respect to the evidence presented to establish probable cause for search or seizure." Proposed Oregon Criminal Procedure Code § 168 (1972). The Senate Judiciary Committee adopted a proposed amendment to add accuracy and truthfulness as additional bases for challenge. The language was intended to reflect more accurately the existing grounds for motions to controvert.[7]

The House Judiciary Committee scrutinized this language. Some legislators expressed concern that the statute, as written, would require suppression of any inaccuracy without regard to its materiality. A motion to delete the amending language failed, however.[8] As an alternative, the language now contained in subsection (5) was suggested and adopted. The

---

[6] ORS 133.693 provides in full:

"(1) Subject to the provisions of subsection (2) of section (2) of this section, in any proceeding on a motion to suppress evidence the moving party shall be entitled to contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure.

"(2) If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness.

"(3) In any proceeding under subsection (2) of this section, the moving party shall have the burden of proving by a preponderance of the evidence that the evidence presented before the issuing authority was not offered in good faith, was not accurate and was not truthful.

"(4) Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution.

"(5) The court shall determine whether, under applicable law, any inaccuracy, untruthfulness or lack of good faith requires suppression."

[7] Tape 10, Senate Judiciary Committee, March 14, 1973, Side 1. We find no explanation of the meaning of the terms accuracy, truthfulness and good faith in the legislative history. We assume, however, that each has a distinct meaning. The instant case involves only a challenge to the accuracy of the facts stated in the affidavit.

[8] Tape 28, House Judiciary Committee, May 28, 1973, Side 2.

purpose of this amendment was to avoid defining by legislation the legal standard for suppression. This, according to the amendment's proponent, was a job for the courts.[9] As a result, the subsection lays out the criteria that may be relevant to suppression on motions to controvert but leaves it to the courts to determine if "under applicable law" suppression is required. We must discern standards for suppression outside ORS 133.693.

In *State v. Russell*, 293 Or 469, 650 P2d 79 (1982), we examined the motion to suppress statutes. We stated:

> "Motions to suppress evidence are provided for by statute. Statutory grounds for a suppression include noncompliance with ORS 133.545 and 133.555 [containing probable cause and recordation requirements]. Also, ORS 133.693 provides procedures whereby one who moves to suppress may 'contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure.' Thus the design of the code of criminal procedure is to enable a defendant to challenge by a motion to suppress evidence either the legal sufficiency or truthfulness of the sworn information upon which the magistrate acted." 293 Or at 474 (footnote omitted).

*Russell* recognized that legal sufficiency of the affidavit, that is, whether the facts suffice to establish probable cause, is only one ground upon which an affidavit may be challenged. The requirement that warrants be supported by probable cause exists by statute, ORS 133.545 and 133.555, and by both state and federal constitutions, Article I, section 9, and the Fourth Amendment respectively. Where "applicable law" appears in a statute, however, we need not proceed to a constitutional analysis.[10]

As in *Russell*, we are confronted in the instant case only with a challenge to the accuracy of the information presented by the affiant. The trial court did not find bad faith in this instance.

---

[9] Tape 28, House Judiciary Committee, Comments of Representative Hampton regarding SB 80, May 29, 1973, Side 2.

[10] The issue of the "applicable law" with regard to suppression for lack of good faith or untruthfulness is not before us in this case.

The state questions "whether the affidavit's failure to state such nonoccurrences or nonexistent facts as the absence of human activity or of a pathway or road should be considered 'omissions' at all." The state is correct in suggesting that it should not. The point is not that the affiant was required to attest to the nonexistence of these facts. Obviously, if the affiant makes no claim that paths exist, the courts will not assume otherwise. Rather, when it was revealed that the marijuana was not growing in close proximity to defendants' residence, as the suppression judge found the sum total of inaccuracies in the affidavit led one to believe, the affidavit failed to meet probable cause because it contained no other facts to support a connection between the house and the plants.

 With regard to the method of review of the factual sufficiency of the affidavit, the suppression judge begins with the affidavit(s) and record, if any, upon which the magistrate issued the warrant. ORS 133.555. The judge then evaluates whether the defendant has proven by a preponderance of the evidence that the evidence upon which the magistrate relied was inaccurate. ORS 133.693(3). If the defendant proves inaccuracies, the judge must then assess the sufficiency of the affidavit on the basis of the remaining accurate facts in the affidavit. Contrary to the suggestion in *McManus,* the suppression judge does not consider the "corrected" evidence. The judge's assessment is a process of subtraction, not addition. The purpose of the proceeding is to ensure that the affidavit and record, if any, upon which the magistrate relied contained accurate factual information and that this information conveyed probable cause to issue the warrant.

 With regard to the appropriate standard of review, where the search or seizure occurred by authority of a warrant, subsection (2) of ORS 133.693 allows the defendant to contest the good faith, accuracy and truthfulness of the affiant "only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness." In this way, the statute incorporates a presumption of the legitimacy of warrants and their supporting affidavits that are adequate on their face. However, once the defendant has set forth a "substantial basis" for questioning the affidavit, a showing that is not challenged in

this case,[11] the sufficiency of the "evidence presented to establish probable cause for search or seizure" and the question whether any "inaccuracy, untruthfulness or lack of good faith requires suppression," must be resolved by the reviewing court independently of the magistrate's decision. If the defendant succeeds in showing that the affidavit contains material inaccuracies, there is no occasion for deference to the issuing magistrate's decision. That decision was itself the product of faulty information.

The Court of Appeals affirmed the trial court, relying on the two part test established in *State v. Anspach,* 68 Or App 164, 682 P2d 786 (1984), and affirmed by this court, 298 Or 375, 692 P2d 602(1984). The Court of Appeals reasoned that the affidavit, re-examined in light of the controverted evidence, did not state sufficient facts to permit the inference that defendants had some relationship or link to the marijuana plants on their property. The court observed: "The first requirement of *Anspach* is not met simply because defendants owned the 50-acre parcel and lived in the only residence on the land." 68 Or App at 674.

It is this point that the state protests. The state's case is premised upon the argument that the co-existence of marijuana and one residence on the same privately owned parcel establish probable cause to search the residence in all cases. We disagree.

In *State v. Anspach, supra,* we held that "the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." 298 Or at 380-81. We approved the Court of Appeals' test, the first part of which is pertinent here. We required the affidavit to "set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the persons residing on the premises have some relationship to the plants." 298 Or at 381.

A magistrate, reading the uncontroverted affidavit in the instant case, could conclude that there was close proximity

[11] In *State v. Wright,* 266 Or 163, 511 P2d 1223 (1973), by contrast, the moving party failed to meet its burden to show a "substantial basis" for questioning the affidavit.

or even a line of sight between the only residence and the plants. This fact, if true, could, in some cases, form the necessary "relationship" between the residents and the plants. It could, in some conditions, eliminate the need for other evidence of a connection between the two, such as paths, roads, or activity by the residents at the planting site. However, once it was disclosed that the actual distance between the two was approximately three-eighths of a mile, the conclusions that may properly be drawn on the basis of proximity alone no longer exist. Some other connection is required. We agree with the Court of Appeals that it was not provided here.

Affirmed and remanded to the trial court for further proceedings.