Argued and submitted February 4, reversed and remanded May 25, petitions for review allowed October 4, 1994 (320 Or 270)

**STATE OF OREGON,**
*Appellant,*

*v.*

**JAMES DALTON KEENEY,**
Joyce Laverne Keeney,
Kerry James Keeney,
and Krysia Ann Nivison,
*Respondents.*

(90-05-1143)

**STATE OF OREGON,**
*Appellant,*

*v.*

**KERRY JAMES KEENEY,**
Ronnie Michael Jones,
Michael C. Flick
and Rayma Jones,
*Respondents.*

(92-05-1144)

**STATE OF OREGON,**
*Appellant,*

*v.*

**GARY LEON NIVISON,**
Krysia Ann Nivison
and Kerry James Keeney,
*Respondents.*

(92-05-1146)

**STATE OF OREGON,**
*Appellant,*

*v.*

**THOMAS ROBERT BRADY,**
Kerry James Keeney
and Edward Lawrence Ames,
*Respondents.*

(92-03-0630; CA A78976)

875 P2d 539

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert J. McCrea argued the cause for respondents James Dalton Keeney, Joyce Laverne Keeney, Kerry James Keeney,

Krysia Ann Nivison, Rayma Jones, Ronnie Michael Jones, Michael C. Flick, Gary Leon Nivison and Edward Lawrence Adams, and filed the brief for Joyce Laverne Keeney. With him on the brief was McCrea, P.C. Joining in the brief were Elton T. Lafky, Paul Ferder, Forrest Reid, Neil Lathen, Richard Forcum, David Moule and David E. Groom.

Richard Forcum and Janine Curtis filed the brief for respondent Kerry James Keeney. Joining in the brief were Forrest Reid, Paul Ferder, Elton T. Lafky and Lafky & Lafky, Robert J. McCrea and McCrea, P.C., David E. Groom and Public Defender's Office, Neil Lathen and Burt, Swanson, Lathen, Alexander & McCann, P.C., and David Moule and Moule & Frank.

David Moule and Moule & Frank filed the brief for respondent Edward Lawrence Ames. Joining in the brief were Forrest Reid, Paul Ferder, Richard Forcum, Neil Lathen, Robert J. McCrea, David E. Groom and Elton T. Lafky.

Sally L. Avera, Public Defender, and David E. Groom, Deputy Public Defender, filed the brief for respondents Ronnie Michael Jones and Rayma Jones.

Helen Lenore Cooper and Ferder, Ogdahl, Brandt & Casebeer filed the brief for respondent Krysia Ann Nivison.

Neil F. Lathen and Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C., filed the brief for respondent Gary Leon Nivison.

No appearance for respondent Thomas Brady.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendants are charged with conspiracy to manufacture a controlled substance, conspiracy to possess a controlled substance and conspiracy to deliver a controlled substance, in violation of ORS 161.450 and ORS 475.992. A magistrate issued warrants to search property, vehicles and buildings belonging to the various defendants. Except as to defendants Gary Nivison and Krysia Nivison, all of the warrants are supported by a single affidavit prepared by Deputy McAnulty of the Linn County Sheriff's Office. The warrants were executed and evidence was seized pursuant to each warrant. On the basis of a second affidavit prepared by McAnulty, incorporating his first affidavit, a warrant was issued and evidence was seized at defendants Gary Nivison and Krysia Nivison's property. Defendants filed motions to suppress the evidence and to controvert assertions in the affidavit.[1] Following a pretrial hearing, the court found, *inter alia*, that certain assertions in the affidavit had been controverted and ordered that all evidence seized pursuant to each search warrant be suppressed.[2] The state appeals from the suppression order. We reverse.

In the search warrant affidavit, McAnulty, the affiant, asserts that defendants are involved in a marijuana growing operation in which they cultivate marijuana in busses buried on various properties. The detailed information about the growing operation was provided to McAnulty by an unnamed informant. The affidavit reveals that a number of factual assertions made by the informant were independently corroborated by the police and that, in the course of providing information about the marijuana growing

---

[1] ORS 133.693(2) provides:

"If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness."

[2] Defendants Gary Nivison and Krysia Nivison additionally argue that the affidavit for the subsequent search warrant to search their property was based primarily on evidence illegally seized from the residences pursuant to the first warrant and, thus, must be suppressed as derivative "tainted evidence." ORS 133.683. Their argument fails, because we hold that the initial affidavit contained facts sufficient to establish probable cause.

operation, the informant made two "controlled drug buys" for the police.

In their motions to controvert, defendants contended:

(1) The CRI (confidential reliable informant) had a motive to fabricate, because she was the estranged wife of defendant Kerry Keeney and was engaged in a divorce and child custody battle with him. Deputy McAnulty had omitted this "impeaching evidence" from the affidavit and had falsely asserted in the affidavit that the informant "has no reason to exaggerate or fabricate" the information;

(2) The controlled buys made by the CRI did not enhance her credibility, because they were made after she began giving information to the authorities;

(3) Certain information provided by the CRI was obtained in violation of the marital privilege; and

(4) The search at one of the locations exceeded the scope of the warrant.[3]

Following an evidentiary hearing, the court found that McAnulty's statement in the affidavit that "the CRI also has no reason to fabricate the information" was knowingly false, because McAnulty knew that the informant was the estranged wife of defendant Kerry Keeney, that she was involved in a bitter dissolution and custody fight with Keeney and that McAnulty was personally aware that people embroiled in such problems are given to "distortion, exaggeration, and even fabrication." The court also determined that the assertion in the affidavit that the informant had made two controlled drug buys was misleading and, therefore, controverted, in that a magistrate would likely assume that the buys were related to an independent investigation and had not been made solely to enhance the credibility of the informant for purposes of securing the warrants in this case. Finally, the court concluded that, "as to some of the defendants, the CRI's information came directly from [defendant] Kerry Keeney,

---

[3] The state conceded that the search of an outbuilding and underground room at 27201 Highdeck Road exceeded the scope of the search warrant for that property. The state does not contest the suppression of evidence resulting from that aspect of the search at that address.

her husband, stated in confidence, with no one else around to affect the marital privilege."

The court then reassessed the sufficiency of the affidavit, in the light of the information regarding the informant's marital discord and child custody battle and its other findings, and concluded that the affidavit did not establish probable cause to search defendants' property.

■ We begin with the court's conclusion that McAnulty's statement that "the CRI also had no reason to exaggerate or fabricate the information" was knowingly false. The court reasoned that the assertion was knowingly false, because McAnulty knew that the informant was defendant Kerry Keeney's estranged wife, that she was involved in a bitter dissolution and child custody battle with him and that people embroiled in such problems are given to "distortion, exaggeration and fabrication."

We disagree with the court's conclusion that a person experiencing marital discord and a child custody battle with a spouse *necessarily* has a motive to provide false information to the authorities about that spouse. Marital strife and a battle for the custody of a child may not be particularly conducive to truth telling as it relates to the other party's conduct in the marriage or fitness to parent the child. However, even assuming that each spouse in a dissolution and child custody battle wishes to put the other spouse in the worst possible light, it does not necessarily follow that information provided by a spouse to government authorities implicating the other spouse in a crime is likely to be false. It is equally reasonable to view an informant's marital strife and child custody battle with a spouse as strongly indicative of an informant's reason to provide information implicating the other spouse in a crime.

■ However, we need not decide whether the trial court correctly concluded that McAnulty's assertion about the informant's lack of motive to fabricate was false. An anonymous informant emerging from the criminal milieu is "almost universally viewed with a jaundiced eye." *See State v. Montigue*, 288 Or 359, 364, 605 P2d 656 (1980), *quoting* Moylan, "Hearsay and Probable Cause: An Aguilar and Spinelli Primer," 25 Mercer L Rev 741, 769 (1974); *see also State*

*v. Carlile*, 290 Or 161, 167, 619 P2d 1280 (1980). That is the case here. The affidavit establishes that the informant is not a disinterested citizen, but a fellow conspirator. A magistrate initially reviewing the affidavit would not be so naive as to think that the informant would provide such detailed information to the police without some ulterior motive and would have viewed the informant and the information in that manner. In other words, in initially evaluating the affidavit, a magistrate could give little or no weight to McAnulty's opinion[4] that the informant had no motive to fabricate, because the informant's obvious criminal involvement with the people the informant was implicating demanded that the informant be viewed as having some ulterior motive for providing the information, and the information be looked upon with a "healthy skepticism" and "examined with great scrutiny." *See State v. Montigue, supra*, 288 Or at 364, *quoting* Moylan, *supra*, 25 Mercer L Rev at 769.

Even assuming that the trial court here was correct in concluding that, in the light of defendant Kerry Keeney's additional evidence about the informant's marital discord, McAnulty's opinion about the informant's lack of a motive to fabricate was false or made in bad faith, that opinion could have contributed little or nothing to the magistrate's ability to evaluate the informant's truthfulness and to determine whether the police had probable cause to believe that evidence of crime would be found as alleged in the affidavit. Further, even if the additional information about the informant's marital strife had controverted McAnulty's opinion about the informant, the trial court erred in finding that the information significantly impacted the determination of probable cause.

■ We now turn to the court's determination that the assertion in the affidavit that the informant had made two controlled drug buys was misleading and, therefore, controverted. The court reasoned that the assertion regarding the controlled buys was misleading because a magistrate would

_____

[4] In *State v. Stockton*, 120 Or App 111, 852 P2d 227 (1993), we recently characterized a similar assertion by an affiant as one that a magistrate could properly evaluate as the affiant's statement of opinion. We held that the court did not err in failing to excise the statement from the affidavit.

likely assume that the buys related to an independent investigation and had not been made solely to enhance the informant's credibility for the very purpose of securing the warrants in this case. The court concluded that "the controlled buys add absolutely nothing to the credibility of the CRI." The state argues that

> "[t]he court erred in imposing a nonexistent legal requirement on the buys. The state is unaware of any law that discounts the value of a controlled buy because it was accomplished after, rather than before, the informant went to the police and gave information. The fact that controlled buys precede, follow, or are contemporaneous with the informant giving information to the police is logically immaterial. What matters is that the informant performs the buys prior to the application for the search warrant."

Defendants argue that a controlled drug buy can be used to enhance an informant's credibility only "if it confirms a prior tip as being truthful" and results in an arrest and conviction.

We agree with the state and disagree with the court's conclusion that McAnulty's assertions about the controlled drug buys were misleading and somehow disrupted the magistrate's evaluation of the informant's trustworthiness. McAnulty asserted that the informant had engaged in two controlled buys. He did not assert or imply that the controlled buys related to any independent investigation.

A controlled purchase of an illegal drug demonstrates some "truth telling." The fact that the buys did not relate to an independent investigation or did not appear to "[confirm] a prior tip" does not preclude a magistrate from considering the controlled drug buys in assessing the informant's credibility. *See State v. Nuttall*, 97 Or App 285, 290, 776 P2d 26, *rev den* 308 Or 593 (1989). The fact that an informant made a controlled purchase of an illegal drug is simply a part of the "raw data" on which a magistrate can make an independent judgment of the informant's trustworthiness. 97 Or App at 290. How much weight should be given to that fact by the magistrate in assessing the informant's "credibility" depends on the totality of the circumstances, as set forth in the affidavit, in each case. *See State v. Young*, 108 Or App 196, 197, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992). Here, a magistrate could reasonably attribute

some weight to the controlled buys in assessing the informant's credibility.

To the extent that the court, in reassessing the affidavit, reasoned that the controlled buys were entitled to no weight in evaluating the informant's credibility, it erred. However, even if the controlled buys were entitled to little or no weight in assessing the informant's "credibility," the affidavit contains sufficient facts establishing the reliability of the informant's information.[5]

As to the marital privilege issue, the court did not identify which information provided by the informant allegedly fell within the marital privilege or which information of that nature was excised or disregarded by the court in its reassessment of the affidavit. On appeal, the state argues that the marital communications privilege does not apply, because OEC 505(2) applies to "criminal actions," and an application for a search warrant is part of a criminal investigation rather than a criminal action. We need not address the state's argument.

---

[5] For example, the affidavit reveals that:

1. The CRI provided McAnulty with five photographs of defendant Kerry Keeney's growing marijuana.

2. The CRI made admissions against penal interest in which she admitted that she manicured and cultivated marijuana with two of the defendants and received marijuana from a third defendant.

3. The CRI represented that she had heard some of the defendants converse about business cards left at locations where some of the defendants' marijuana plants had, in fact, been seized by the police.

4. The CRI provided a list of items on a paper purportedly prepared by one of the defendants in connection with resolving a dispute about a mutual marijuana growing operation. McAnulty asserted, on the basis of his training and experience, that many of the items listed on the paper were items used in the manufacture of marijuana.

5. The CRI named various persons to whom one or more defendants had distributed marijuana. McAnulty confirmed that some of those persons had previously been involved in drug trafficking.

6. The CRI overheard conversations relating to defendants' purchase of at least two busses in order to bury them and to convert them into grow rooms. Detectives were able to verify that a bus was sold in 1990 by an Albany dealership to a person named Pat Moore. The address for Pat Moore provided in the purchase agreement does not exist and the bus was never registered after the sale. Pat Moore was known to the police to be an associate of defendants.

The affidavit sufficiently establishes the basis of the informant's knowledge and trustworthiness. Even excluding any arguably privileged marital communications[6] between the informant and defendant Kerry Keeney, the affidavit establishes probable cause to believe that evidence of an on-going marijuana growing operation, using buried busses as grow rooms, would be found on the properties that were searched.[7]

Reversed and remanded.

---

[6] We exclude from our determination of probable cause the following assertions in the affidavit:

"The CRI was told by Kerry Keeney that he made $15,000 on the 1990 crop."

"The CRI was told by Kerry Keeney that in the Fall/Winter of 1990/1991, Kerry Keeney took the proceeds from the marijuana sales of that year and made a down payment on a house, at 27333 Highdeck Road, Cascadia, this was owned by Sidney Walters."

"The CRI told me that this was told to the CRI by Kerry Keeney."

"Kerry Keeney told the CRI—and the CRI told me that big holes were dug with a backhoe operated by Kerry Keeney."

"The CRI also said that Kerry Keene [sic] told the CRI that the holes were dug to bury buses [sic] for mari [sic] grows. The CRI was also told that grows are actually in operation in two unground [sic] buses [sic] at Kerry Keene's [sic] place, one at Jim Keene's [sic], one at Buckshot Ames and one at the property of Leon and Krysia Nivison's place."

"The CRI advised that Kerry Keeney told the CRI that Buckshot Ames had a grow and that 'Buckshot' had marijuana every 40 days."

[7] The court also apparently found that the assertion in the affidavit that the "CRI saw evidence that Kerry Keeney was living at 27333 Highdeck Road just prior to Christmas 1991, was inaccurate because the CRI and the affiant knew that Kerry Keeney resided in Bend, Oregon." In addition, the parties conceded that James Keeney and Joyce Keeney were not husband and wife, but were divorced when the affidavit was prepared and the search executed. The state does not challenge either finding on appeal. We review the affidavit consistently with the trial court's ruling.