Argued and submitted January 5, 1995, decision of the Court of Appeals reversed; order of the circuit court affirmed, and case remanded to the circuit court for further proceedings June 13, 1996

STATE OF OREGON,
*Respondent on Review,*

*v.*

JAMES DALTON KEENEY,
Joyce Laverne Keeney, Kerry James Keeney,
and Krysia Ann Nivison,
*Petitioners on Review,*

STATE OF OREGON,
*Respondent on Review,*

*v.*

KERRY JAMES KEENEY,
Ronnie Michael Jones, Michael C. Flick,
and Rayma Jones,
*Petitioners on Review,*

STATE OF OREGON,
*Respondent on Review,*

*v.*

GARY LEON NIVISON,
Krysia Ann Nivison and Kerry James Keeney,
*Petitioners on Review,*

STATE OF OREGON,
*Respondent on Review,*

*v.*

THOMAS ROBERT BRADY,
*Respondent,*

*and*

Kerry James KEENEY
and Edward Lawrence Ames,
*Petitioners on Review.*

(CC 92-05-1143, 92-05-1144, 92-05-1146,
92-03-0630; CA A78976; SC S41492, S41495, S41497,
S41498, S41499, S41555)

918 P2d 419

Robert J. McCrea, Eugene, argued the cause and filed the petition for petitioners on review Joyce Laverne Keeney, James Dalton Keeney, and Michael C. Flick. With him on the petition were Forrest Reid, Albany, and Elton T. Lafky, Salem.

David Moule, of Moule & Frank, Eugene, argued the cause and filed the petition for petitioner on review Edward Lawrence Ames.

Helen L. Cooper, of Ferder, Ogdahl, Brandt & Casebeer, Salem, filed the petition for petitioner on review Krysia Ann Nivison.

Neil F. Lathen, of Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C., Salem, filed the petition for petitioner on review Gary Leon Nivison.

Richard E. Forcum, of Forcum & Speck, and Janine Curtis, Bend, filed the petition for petitioner on review Kerry James Keeney.

Sally L. Avera, Public Defender, and David E. Groom, Deputy Public Defender, Salem, filed the petition for petitioners on review Ronnie Michael Jones and Rayma Jones.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review.

DURHAM, J.

## DURHAM, J.

Defendants are charged with conspiracy to manufacture a controlled substance, conspiracy to possess a controlled substance, and conspiracy to deliver a controlled substance, in violation of ORS 161.450 and 475.992. The trial court suppressed evidence of those crimes that was seized pursuant to four search warrants. The court found that several sworn statements of the affiant, made in support of the state's warrant applications, were untruthful. The state appealed the suppression order, ORS 138.060(3), and the Court of Appeals reversed. *State v. Keeney*, 128 Or App 211, 875 P2d 539 (1994). On review, we reverse the decision of the Court of Appeals and affirm the order of the trial court.

In March 1992, a police officer (hereinafter referred to as the "affiant") applied, pursuant to ORS 133.545(4),[1] for three warrants, to search property owned or occupied by all defendants except defendants Gary and Krysia Nivison. In support of the application, the affiant submitted an affidavit stating that an unnamed "confidential reliable informant" (CRI) had informed him that defendants were growing marijuana in buses buried underground on the property to be searched. The affiant also related details about the growing operation that were supplied by the CRI.

Relying on the affidavit, a magistrate issued warrants to search the property. On March 12, 1992, police officers executed the warrants and seized evidence. Later, the affiant applied for another warrant to search property where defendants Gary and Krysia Nivison were residing. The affiant supported the application with a second affidavit, which incorporated and relied on facts stated in the first affidavit and on the evidence seized earlier, to establish probable

---

[1] ORS 133.545(4) provides:

"The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

cause. A magistrate issued a fourth warrant, and police officers seized additional evidence at the Nivison property.

Before trial, defendants filed motions for a hearing to controvert evidence presented in the search warrant affidavits and to suppress evidence seized pursuant to the warrants. After an evidentiary hearing, the trial court entered the following order suppressing the evidence obtained pursuant to the search warrants:

> "The court considers some serious and essential statements in the search warrant affidavit to be controverted, both in the areas of what was said in the affidavit and what was knowingly omitted from being said.

> "The application for search warrant states on page 11, 'The CRI also has no reason to exaggerate or fabricate the information the CRI has provided to me.' That statement is clearly false. The affiant knew that it was false. His testimony at the hearing was that he was fully aware that the CRI was the estranged wife of defendant Kerry Keeney and that at the time of his contact with the CRI, he was fully aware of the fact that she and Kerry Keeney were embroiled in a bitter contested dissolution proceeding, including an active fight for the custody of the child or children of the parties. Rather than spelling this out in more detail, the court refers to the reply memorandum of defendant Joyce Keeney, page 7, second beginning paragraph through the matters stated on page 8, lines 1 through 9.[1] The court considers it important to note that this domestic battle was going on, including court hearings at or near the time that the CRI was reported to have furnished the information to the police. The state indicates that if there is a problem with this, it can be eliminated by simply striking that language from the affidavit and considering the remainder. This court does not view this suggestion to be any solution at all to the problem. The affiant should have stated to the magistrate the exact status of the CRI with respect to the domestic dispute and pointed out specifically the reasons why the CRI was considered reliable in spite of what appears to be a great incentive to exaggerate or distort.

> "* * * * *

> "Page 10, the first beginning paragraph of the application for search warrant, indicates that the CRI saw evidence

that Kerry Keeney was living at 27333 High Deck Road just prior to Christmas 1991. The fact is, and the CRI and the affiant knew that Kerry Keeney resided in Bend, Oregon.

"On page 9 of the application for search warrant, last beginning paragraph, states that the CRI advised that 'just prior to Christmas 1991, they saw Kerry Keeney ...' It is this court's recollection that the affiant may have been told October 1991, or between Thanksgiving and Christmas 1991. The affiant was not advised by the CRI that 'just prior to Christmas 1991.'

"Returning to the controverted statement, '[t]he CRI also has no reason to exaggerate or fabricate the information the CRI has provided to me,' the court agrees with the statement made by defendant Joyce Keeney in her reply to the state's memorandum, page 11, second beginning paragraph, 'It is essentially impossible for the present court to evaluate the extent to which the magistrate was persuaded and influenced by the assertion of fact that the information was coming from a disinterested citizen.'

"* * * * *

"NOW THEREFORE IT IS HEREBY ORDERED that the Motions to Suppress be and hereby are allowed.

---

"[1] Before turning to these contentions, however, it is necessary to analyze and consider the declaration in the affidavit:

'The CRI has no reason to exaggerate or fabricate the information the CRI has provided to me.'

"This assertion has now been demonstrated to be patently false. The CRI, now identified as Stacie Stokes/Keeney, the estranged wife of Kerry Keeney, was embroiled in a dissolution and custody fight. The affiant was aware of the posture of such matter. The affiant, as a police officer, also had, as he admitted, extensive experience with domestic altercations and disturbances as well as dissolution and custody battles. He further admitted that he was aware that persons so embroiled were given to distortion, exaggeration, and even fabrication.

"The falsity inherently present in the assertions is twofold. Firstly, that the information regarding the true nature

of the bitterness and motivation is withheld from the magistrate; secondly, the magistrate is affirmatively provided the lie that there is no reason for the CRI to exaggerate or fabricate."

The trial court also concluded that certain information provided by the CRI is subject to the marital privilege and that controlled buys made by the CRI after she contacted the police did not enhance her credibility. Because we conclude that the trial court properly suppressed evidence based on its finding that certain statements in the search warrant affidavit were untruthful, we need not and do not address the trial court's conclusions regarding the controlled buys and the marital privilege.

■ We turn to the parties' arguments[2] regarding the order suppressing evidence. ORS 133.693 provides in part:

"(1) Subject to the provisions of subsection (2) of this section, in any proceeding on a motion to suppress evidence the moving party shall be entitled to contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure.

"(2) If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness.

"(3) In any proceeding under subsection (2) of this section, the moving party shall have the burden of proving by a preponderance of the evidence that the evidence presented before the issuing authority was not offered in good faith, was not accurate and was not truthful.

"* * * * *

---

[2] Defendants argue that the state's appeal from the suppression order is moot. We have considered defendants' argument but conclude, without further discussion, that it is not well taken. An elaboration of our reasoning would not benefit the bench or bar.

"(5)   *The court shall determine whether, under applicable law, any inaccuracy, untruthfulness or lack of good faith requires suppression.*" (Emphasis added.)

■    The statute does not define the terms "inaccuracy," "untruthfulness," or "lack of good faith." The trial court's order indicates that the court interpreted the term "untruthfulness" to mean dishonesty. For the reasons that follow, we agree with the trial court's interpretation of that term.

■    When interpreting a statutory provision, the court typically gives words of common usage their "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The dictionary defines the word untruthfulness to mean "the quality or state of being untruthful." *Webster's Third New Int'l Dictionary*, 2514 (unabridged ed 1993). The word "untruthful" may mean either "inaccurate" or "dishonest." *Ibid.*

When construing the text of a statute, "the court utilizes rules of construction that bear directly on the interpretation of the statutory provision in context." *PGE*, 317 Or at 611. One such rule is stated in ORS 174.010: "In the construction of a statute, * * * where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." *See State v. Harp*, 299 Or 1, 7 n 7, 697 P2d 548 (1985) (court assumed that each term in ORS 133.693(5) "has a distinct meaning"). Applying that rule here, we conclude that the legislature intended that the terms "untruthfulness" and "inaccuracy" would have different meanings. We therefore conclude that the word "untruthfulness" in ORS 133.693(5) refers to dishonesty, rather than inaccuracy.

■    The state challenges the trial court's finding that the affiant's statement that "[t]he CRI also has no reason to exaggerate or fabricate the information the CRI has provided" was untruthful. The state argues that the affiant's statement was simply his opinion, rather than an untruthful statement of fact.

We decline to draw the requested distinction between "fact" and "opinion." As the Supreme Court noted in

*Beech Aircraft Corp. v. Rainey*, 488 US 153, 168, 109 S Ct 439, 102 L Ed 2d 445 (1988):

> " 'All statements in language are statements of opinion, i.e., statements of mental processes or perceptions. So-called 'statements of fact' are only more specific statements of opinion.' " (Quoting W. King & D. Pillinger, *Opinion Evidence in Illinois*, 4 (1942).)

The trial court, as factfinder, had the responsibility to decide whether the affiant's statement disclosed facts of which the affiant claimed to have personal knowledge and, if so, whether the statement was credible. Those are factual inquiries and, assuming the existence of adequate supporting evidence, this court will not overturn the trial court's findings on those questions even if we might characterize the affiant's statement differently.

It is the magistrate's role, not the affiant's, to assess the factual significance or weight of information that bears on the credibility of an unnamed informant, when deciding whether to believe that informant. Regardless of whether the affiant's statement was his "opinion" or a "fact," ORS 133.545(4) required the affiant to disclose the CRI's known involvement in a dissolution and child custody battle with one of the defendants, because that information had a material "bearing on [the] unnamed informant's reliability." ORS 133.545(4), set out at note 1 above.

■ This court will not disturb the trial court's findings of historical fact if they are supported by evidence in the record. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Evidence in the record supports the trial court's finding that the affiant was "untruthful" within the meaning of ORS 133.693(5). The court found, on the basis of evidence in the record, that the affiant both withheld from the magistrate information bearing on the CRI's reliability and affirmatively lied to the magistrate in stating that the CRI had no reason to exaggerate or fabricate the information that she provided. The record also supports the court's findings that the affiant was untruthful in reporting facts about Kerry Keeney's residence and the timing of the CRI's observations of Kerry Keeney.

We next consider whether the trial court properly allowed defendants' motions to suppress, pursuant to ORS 133.693(5), as a consequence of the affiant's untruthfulness. In *Harp*, 299 Or at 8, the court determined that, in enacting ORS 133.693, the legislature deliberately avoided defining the legal standard for suppression on the basis of any inaccuracy, untruthfulness, or lack of good faith in a search warrant affidavit. Instead, the legislature left to the courts the task of deciding when the applicable law requires suppression. *Ibid.* The *Harp* court held that, when a defendant establishes through a motion to controvert that certain information in a search warrant affidavit is inaccurate, the trial court must excise the inaccuracies from the affidavit and "then assess the sufficiency of the affidavit on the basis of the remaining accurate facts in the affidavit." *Id.* at 9. However, the court did not address whether the applicable law requires suppression if the defendant establishes that the affiant was *untruthful*. *Id.* at 8 n 10.

The state urged the trial court to excise only the three specifically untruthful statements from the affidavit and then to reassess the affiant's remaining factual assertions to determine whether they supply probable cause. The trial court said that it did "not view this suggestion to be any solution at all to the problem." Accordingly, the trial court did not discuss, in its order allowing the motions to suppress, the remaining statements in the affidavit that, according to the state, independently corroborate the CRI's information and supply probable cause to support the issuance of the warrants.

On appeal, the state argued that the trial court erred by declining to consider the remaining factual assertions in the affidavit that tend to corroborate the CRI's information. The Court of Appeals accepted that argument and concluded that, notwithstanding the CRI's involvement in a dissolution and child custody dispute with one of the defendants, and even assuming that the controlled buys do not enhance the CRI's credibility, the remaining facts in the affidavit establish the reliability of the information and support probable cause. 128 Or App at 217-21.

We conclude, as is implicit in the state's argument, that the analysis set forth in *Harp* applies to "untruthful" statements, as well as to "inaccurate" statements. However, we disagree with the state and the Court of Appeals that a finding of "untruthfulness" necessarily carries the same limited consequences as a finding of "inaccuracy." ORS 133.693(3) requires that the party seeking suppression of evidence show, by a preponderance of the evidence, that facts in a sworn affidavit submitted as part of the application for a search warrant were not offered in good faith *or* were inaccurate *or* were untruthful. A demonstration that an affiant has supplied inaccurate information in a search warrant affidavit furnishes no reason for the court to conclude that the affiant's remaining factual assertions also are inaccurate, in the absence of some showing to support that conclusion. By contrast, a demonstration that the affiant *lied* to the magistrate may lead the trial court to conclude that the affiant is not credible and that it should give no weight to the affiant's other statements.

The foregoing conclusion derives from the ancient common law maxim, *"falsus in uno, falsus in omnibus" (i.e.,* false in one thing, false in everything). In *Simpson v. Miller*, 57 Or 61, 110 P 485 (1910), the court looked to Wigmore's treatise on evidence for an explanation of that maxim:

> " 'The notion behind the maxim,' says Mr. Wigmore at Section 1013 of his valuable work on evidence, 'is that, though a person may err in memory or observation or skill upon one point and yet be competent upon others, yet a person who once deliberately misstates, one who goes contrary to his own knowledge or belief, is equally likely to do the same thing repeatedly and is not to be reckoned with at all. Hence, it is essential to the application of the maxim that there should have been a conscious falsehood." 57 Or at 63.

ORS 10.095(3) codifies the common law maxim as a jury instruction. That statute provides that a trial court, in appropriate circumstances, shall instruct the jury "[t]hat a witness false in one part of the testimony of the witness is to be distrusted in others."

The logic behind the maxim applies with equal force to the analysis of untruthful statements in a search warrant

affidavit. A judge who considers an affidavit supporting a search warrant application is utterly dependent on the affiant's truthfulness in describing, as required by ORS 133.545(4), the facts and circumstances that support the application, including "facts bearing on any unnamed informant's reliability."

■ It follows from the foregoing discussion that, when a trial court finds that an affidavit supporting a search warrant application contains an *untruthful* statement, the court is not required to assume the truth of the remainder of the affidavit. Instead, the court is entitled to disbelieve some or all of the affiant's remaining statements. If untruthfulness in the search warrant affidavit leads the court to conclude that it does not believe the affiant and, as a result, that the affidavit does not establish probable cause, ORS 133.693(5) authorizes the court to suppress evidence seized pursuant to a warrant that was issued on the strength of that affidavit. If the court finds that, despite the affiant's untruthfulness, some portion of the affidavit is credible, the court then must decide, in accordance with the methodology described in *Harp*, whether that portion supplies probable cause for search or seizure. ORS 133.693.

■ Applying those rules to this case, we conclude that the trial court's discovery of three material untruths in the search warrant affidavit entitled it to distrust the affiant's remaining statements. Although the trial court did not state explicitly in its order that, because of the affiant's untruthfulness, it gave no weight to other statements that were not controverted, no other construction of the trial court's order is plausible.

■ As in virtually all similar contexts, explicit trial court findings regarding the existence of untruthfulness by a witness and the effect of that untruthfulness on the court's view of the evidence are of great assistance to an appellate court that must review the lawfulness of the trial court's action. However, if a trial court fails to make express findings on all pertinent facts, and there is conflicting evidence in the record as to those facts, this court will presume that the trial court found facts consistent with its ultimate conclusion. *State v. Weaver*, 319 Or 212, 214 n 1, 874 P2d 1322 (1994); *State v.*

*Stevens*, 311 Or 119, 127, 806 P2d 92 (1991); *Ball*, 250 Or at 487.

We conclude that the trial court permissibly suppressed evidence seized pursuant to the search warrants.

The decision of the Court of Appeals is reversed. The order of the circuit court is affirmed, and the case is remanded to the circuit court for further proceedings.